Gray *et al. v.* Dougherty *et al.*

# MATILDA C. GRAY AND FRANKLINA C. GRAY, BY PHILIP G. GALPIN, HER GUARDIAN, *v.* JAMES W. DOUGHERTY AND SAMUEL B. MARTIN.

FORMER SUIT AND JUDGMENT IN BAR.—The former judgment of a Court, having jurisdiction over the subject matter and the parties, is a bar to a second suit upon the same cause of action between the same parties or their privies, and is conclusive, not only upon every question involved therein and thereby determined, but also as to every other matter which the parties might have litigated in the cause and which they might have decided.

SAME.—In order to render the former judgment effectual as a bar, it must appear that the matters litigated were submitted on their merits, and actually passed on by the Court; for if the trial went off on a technical defect, or because the cause of action had not yet accrued, or because of the temporary disability of the plaintiff to sue, or the like, the judgment will be no bar to a future action.

PROOF OF WHAT WAS PASSED ON IN A·SUIT.—The issues passed on in a former suit may be ascertained by an inspection of the judgment roll; and if that fails to disclose all the facts necessary to a complete determination of the question, a resort may be had to extrinsic evidence.

AN ERRONEOUS JUDGMENT A BAR.—The question whether a former judgment is erroneous is not material; for an erroneous judgment, until reversed, is as binding and conclusive upon parties and privies as one in which no error is found.

PREMATURE SUIT NO BAR.—If a demand by the vendee for a deed from the vendor is necessary before suit can be brought for a specific performance of a contract to convey land, and a suit is brought to enforce such performance before a demand is made, and judgment is rendered in favor of the defendant by reason of a failure to make such demand, the judgment is no bar to a future action by the vendee, or his successor in interest.

JOINDER OF ACTIONS.—Where a party is entitled to both legal and equitable relief, in a matter arising out of the same transaction and founded on the same instrument in writing, the whole matter may be litigated and finally settled in the·same action.

DEMAND OF DEED BY VENDEE.—Before the vendee can maintain an action to recover damages for the breach of a covenant to convey land, he must demand his deed from the vendor; otherwise, where he brings an action for specific performance, in which case a demand is important only in respect to costs, and does not affect the merits of the case or the rights of the parties.

SAME.—If, however, the vendor, by any act of his, prevents the vendee from performing his part of the agreement, or makes it known that he does not intend to perform his covenant, except upon compulsion, the vendee is not required to demand a deed from the vendor, or perform his part of the agreement before commencing suit; and in such case a Court of equity will award a decree, compelling specific performance within a certain time, provided the vendee shall have before that time performed on his part.

COSTS IN EQUITY.—Costs in equity are always in the discretion of the Court, and whether granted or withheld are but as incidents to and no part of the relief sought.

APPEAL from the District Court, Third Judicial District, Alameda County.

Gray *et al.* *v.* Dougherty *et al.*

The facts are stated in the opinion of the Court.

*E. W. F. Sloan*, for Appellants, on the question of the former judgment in bar, cited: *Gregory* v. *Burrall*, 3 Edw. Ch. C. 417; *Hughes* v. *Blake*, 1 Mason, 518; *Penrie* v. *Dunn*, 4 John. Ch. 142; *Hunt* v. *Terrill's Heirs*, 7 J. J. Marsh, 68; *Wilcox* v. *Balger*, 6 Ham. Ohio, 409.

Where the plaintiff discovers, on the trial of his cause, that he cannot safely rest upon the proof introduced, he should take a nonsuit or an order dismissing his bill without prejudice, otherwise the judgment or decree will conclude him in any subsequent suit on the same cause of action. (*Jenkins* v. *Johnson*, 4 Jones' Eq., N. C. 149; *Hall* v. *Dodge*, 38 New Hamp. 346; *Colburn* v. *Woodworth*, 31 Barb. 382.)

If the judgment of the Court did not afford Amador all the relief he thought himself entitled to, he should have moved for a new trial, applied for a rehearing, or taken and prosecuted an appeal. (*Hall* v. *Dodge*, 38 N. Hamp. 346; *Jenkins* v. *Johnson*, 4 Jones' Eq. 149; *Wainwright* v. *Rowland*, 25 Miss. (4 Jones) 53; *Coggins* v. *Bulwinkle*, 1 E. D. Smith, 434; *Castle* v. *Noyes*, 4 Kernan, 329; *Doty* v. *Brown*, 4 Comst. 71.)

*Wm. W. Crane, Jr.*, for Respondents.

It becomes necessary to examine the judgment and proceedings in *Amador* v. *Norris*, to see if they estop us from obtaining our just rights in the present action.

Clearly they will not, unless we find that in them the matters here presented have once been, not · argued nor pleaded, but *determined*. (1 Greenleaf Ev. p. 529; *Swett* v. *Tuttle*, 4 Kernan, 465.)

Were they so determined?

The rule upon which the defendants rely is, that there must be an end to litigation; and public policy will not admit that the same cause of action be *re-tried* after the solemn *determination* of a Court upon it.

We acknowledge the rule, but we say that the question here presented was not determined in *Amador* v. *Norris*. To

show that it was, the defendants cite several cases. (*Gregory* v. *Burrall*, 2 Ed. Ch. 417.) This case only decides that where a party brought an action at law for money had and received, and failing, afterwards filed his bill in equity to obtain relief upon the same state of facts, that the judgment in the action at law was a bar to the equitable proceeding, because, as the Vice-Chancellor says, p. 420: "Since the decision of Lord Mansfield in the often quoted case of *Moses* v. *Macfarlan*, 2 Burr, 1,005, Courts of law have constantly regarded the action for money had and received as an equitable action, and a substitute, in a great measure, for a bill in equity."

*Penrie* v. *Dunn*, 4 John. Ch. 140, uses this language: "A bill regularly dismissed upon the merits, where the matter has been passed upon, and there is no direction that the dismission be without prejudice, may be pleaded in bar of a new bill for the same matter."

The Court will observe that it is held to be a bar only "where the matter has been passed upon." The case of *Hughes* v. *Blake*, 1 Mason, 514, is to the same effect. So, also, *Hunt* v. *Terrill's Heirs*, 7 J. J. Marsh, 68; *Hall* v. *Dodge*, 38 N. H. 346; *Jenkins* v. *Johnson*, 4 Jones' Eq. 149; *Colburn* v. *Woodworth*, 31 Barb. 382.

Now, when there is a general verdict *in solido* for money, the Court cannot tell from the record which item was allowed, and which disallowed; and therefore, where such a judgment and verdict appears, the record is *prima facie* evidence that all the causes of action were determined.

But even such a general verdict and judgment in an action for the recovery of various *money demands* is only *prima facie* evidence such cause of action was determined; for the party invested may show even by parol and in regard to a *general verdict*, that certain causes of action were not in fact determined by the judgment, for that they were withdrawn from the jury, or that the judgment did not pass upon the merits. (*Doty* v. *Brown*, 4 Comstock, 73–75; *Lawrence* v. *Hunt*, 10 Wend. 80; 2 Smith's Lead. Cases, 669, 670.)

Or the opinion of the Court may be consulted for the same

Gray *et al. v.* Dougherty *et al.*

purpose. (*Burkhead* v. *Brown*, 5 Sandf. 151 ; *Wood* v. *Jackson*, 8 Wendell, 1–49.)

Unless the matter of estoppel appears from the record to have been determined, the defendant must supply defect by parol.    (1 Kern. 426.)

But there is no need of parol *proof* where the pleadings demand two species of relief wholly distinct in *kind*, the one thing asked for being a sum of *money*, and the other being the performance of a certain act.    Is it not pushing this principle of intendment to an absurdity, to say that the money judgment includes within it that cause of action whose remedy is a conveyance, unless parol proof be introduced to show the contrary ?

The judgment can surely determine only such causes of action as are homogeneous with itself.

If I join an action of damages for a broken leg with an action of replevin for a horse, and have a money judgment only, how does that judgment determine the horse is or is not mine, and how could such a judgment be a bar to a second suit in replevin ?

But the action of *Amador* v. *Norris* was not an action at law, but in equity ; and the decree should always find the facts which warrant it.    (*Abbe* v. *Goodwin*, 7 Conn. 377.)

There is nothing in the decree which refers in the remotest manner to the question of specific performance.

It is immaterial whether these two causes of action could have been joined or not.    It is pretty certain that we could not have a money judgment on one cause of action, and a decree in equity on the other, in the same bill.

Now, Amador did have the money judgment.    If he could not have had the decree *also*, he must have waived it.    If he did, the whole question is still open.    (*Larue* v. *Davis*, 13 Johns. 227.)

The whole argument of the defendant must come down to this : " The Court did not find in favor of Amador for the specific performance, therefore, by *implication*, they found against him."

No judgment or decree can be thus extended by argument or implication.

The point *decided* is the thing fixed by the judgment. (*Burke* v. *Table Mt. Water Co.* 12 Cal. 409 ; *Heuston* v. *Williams*, 13 Cal. 27 ; *Earl* v. *Bull*, 15 Cal. 421 ; *Kidd* v. *Laird*, 15 Cal. 182 ; *Fulton* v. *Hanlow*, 20 Cal. 450 ; *Colton* v. *Seavy*, 22 Cal. 496 ; *Hobbs* v. *Duff*, 23 Cal. 596.)

*Yates* v. *Fassett*, 5 Denio, 21, is a case where the defendant in replevin failed to ask for a restoration of the property. He had judgment for *costs* only. He then brought suit to replevin the property, which, pending the litigation, had been turned over to the plaintiff.

Held—that the partial judgment in his favor did not estop him from maintaining a second action.


By the Court, SANDERSON, C. J.

On the 25th of October, 1851, José M. Amador, being seized of certain land in Contra Costa County, sold and conveyed the same to Leo Norris, part of the purchase money remaining unpaid. On the 3d of February, 1852, Amador brought suit against Norris to recover the unpaid purchase money and enforce his vendor's lien therefor. On the 19th of February, 1852, the action thus brought was compromised between them by an instrument in writing, wherein it was agreed that all existing contracts between them should be annulled and rendered void, and that Amador should dismiss his suit, and that Norris should pay to him the sum of six thousand dollars, including sums already advanced, and also relinquish by quitclaim deed all the land which Amador had conveyed to him, except one square league in the northwest corner of the tract. On the 28th of April, 1852, Amador made a formal conveyance to one William Claude Jones of a portion of said land, described as the Alamo or Sycamore Valley. On the 13th of July, 1852, Jones conveyed to Hall McAllister, who, on the 15th of the same month, conveyed the same to Franklin C. Gray, since deceased, whose widow

and child are plaintiffs and respondents.    On the 15th of December, 1852, Amador sold and conveyed the whole of said tract to the defendant and appellant, Dougherty, at the price of twenty thousand dollars.   On the 24th of June, 1854, Leo Norris sold and conveyed to Dougherty the same tract of land, excepting one square league in the northwest corner ; since which time Dougherty has sold and conveyed an undivided third thereof to his co-defendant, Martin.   Norris never did quitclaim or otherwise convey the legal title to Amador as to any part of the land ; so that neither Jones nor Dougherty acquired, by their respective deeds from Amador, a legal estate in any part of the land.   By deed from Norris, however, of the 24th of June, 1854, Dougherty obtained the legal title to the land therein described, including so much of the Sycamore Valley as lies in the limits of the Amador Ranch.

The present action is brought for the purpose of procuring a conveyance of the legal title to the Sycamore Valley ; or, in other words, for the purpose of enforcing, as against Dougherty and Martin, specific performance of the agreement between Amador and Norris to the extent of that valley.

On the 20th of March, 1852, Amador brought suit upon the same contract against Norris to obtain judgment for the balance of the six thousand dollars due him under the contract, and for the further sum of thirty thousand dollars, as damages for the breach of other covenants contained therein, including the covenant to convey, and also to obtain a decree for the specific performance of the last named covenant by quitclaim deed to the entire ranch, except one league in the northwest corner, including said Sycamore Valley.   In said action there was rendered, on the 4th day of November, 1854, a final judgment in favor of Amador for the sum of one thousand six hundred dollars and costs of suit.   This one thousand six hundred dollars was the balance of the six thousand dollars which the jury found was due and unpaid.   No judgment was rendered or denied, except by implication, for damages on account of the breach of the covenant to convey, nor was a decree for specific performance granted or refused in

terms.   The judgment and proceedings in that suit are set up
in their answer by Dougherty and Martin as a bar to the
present action.   The Court below held the matter so pleaded
to be no bar, which ruling is here assigned as the principal
ground of error.

The plaintiffs and defendants, with respect to their rights
and obligations under the agreement of the 19th of February,
1852, occupy no better or worse position than did Amador
and Norris in their suit upon the same agreement.   The
plaintiffs have acquired no higher rights by virtue of their
deeds than Amador held at the time he sued Norris, nor have
the defendants incurred any greater obligations than were
imposed on Norris by the agreement in question.   Suppose,
then, that no conveyance had been made by either Amador or
Norris, could the former maintain a second action against the
latter upon the agreement in question, notwithstanding the
judgment in the former suit.

The former judgment of a Court having jurisdiction over
the subject matter and the parties is a bar to a second suit
upon the same cause of action between the same parties, or
those claiming under them.   And such a judgment is conclu-
sive upon any question directly involved in the suit, and upon
which it depends, although the subject matter of the second
action be different.   It is not only final as to the subject mat-
ter thereby determined, but also as to every other matter
which the parties might have litigated in the cause, and
which they might have decided.   (*LeGuen* v. *Gouverneur and
Kemble,* 1 John. Cases, 436.)   It must appear, however, that
the subject matter or question was not only the same, but
that it was submitted on its merits and actually passed upon
by the Court ; for if the trial went off on a technical defect,
or because the cause of action had not yet accrued, or because
of a temporary disability of the plaintiff to sue, or the like,
the judgment will not be a bar to a future action.   (Greenleaf
on Evidence, Sec. 530.)   These facts may be ascertained by
an inspection of the judgment roll in the former suit ; and if
that fails to disclose all the facts necessary to a complete deter-

mination of the question, a resort may be had to extrinsic evidence. (*Dunckel* v. *Wiles*, 1 Kernan, 420.) If it appear that the parties are the same, or that those in the second suit respectively claim under those in the first; that the cause of action in question is the same, and that in the former suit it was submitted and tried on its merits, and a judgment thereon rendered by a Court of competent jurisdiction, such judgment is conclusive and a bar to the further prosecution of the second action. Nor is it material whether such judgment is erroneous or not, for, until reversed, an erroneous judgment is as binding and conclusive upon parties and privies as one in which no error is found. (*Reynolds* v. *Harris*, 14 Cal. 678.)

To support the plea in bar, defendants rely upon the judgment roll in *Amador* v. *Norris*, unaccompanied by any other evidence. By an inspection of the record in that case it appears that the written contract upon which the plaintiffs in the present case base their right to relief is the same upon which Amador sued, and upon which he relied for a recovery against Norris.

It further appears that the same relief was sought by Amador which is sought by the plaintiffs in the present case, and, so far as the particular cause of action in question is concerned, that the averments and proofs in Amador's case were substantially the same as that in the case at bar, except in the following particulars: In the present case there is an averment of a special demand for a deed, and a refusal, but in Amador's case no such averment was made, there being only the general allegation that Norris had wholly failed, neglected and refused to make the deed in question within one month from the date of the contract as required by its terms. In all other respects the two cases are the same. This difference, in our judgment, is the pivot upon which the question under consideration must turn. If a demand for the deed, before suit, was necessary in order to enable Amador to maintain his action and entitle him to a decree for a deed or a judgment for damages, and no such demand was averred or proved, or, in fact, existed, his cause of action had not accrued at the time the suit was brought,

35

so far as his right to a deed or damage was concerned, and the judgment rendered by the Court could not be held to have been rendered upon the merits and could not, therefore, as we have already seen, be a bar to another action. If, on the contrary, no demand was necessary, the opposite result is the consequence, for there is no pretense that the other averments and proofs were not sufficient to entitle Amador to a decree. From a careful inspection of the record in *Amador* v. *Norris*, we are satisfied that the Judge who tried that case was of the opinion that a demand was necessary, and that he failed to award a decree for a deed upon that ground. Several propositions, covering all the issues in that case, both legal and equitable, were submitted to the jury, in response to which they were instructed to return a special verdict; and among them was one relating to the question of demand and refusal, in response to which the jury found that Amador had not made a demand for a deed, and Norris had not refused to give one, before the commencement of the action. All the other facts necessary to entitle Amador to a decree were found by the jury in his favor, and if no demand was necessary he was clearly entitled, upon the facts as found, either to a deed or judgment for damages. Upon the heel of the verdict follow the conclusions of law drawn therefrom by the Court, and they are in these words: "The Court decides as to the law that the plaintiff is entitled, upon the facts above found, to recover of the defendant the sum of sixteen hundred dollars and the costs of this action." Then follows the judgment in due form. No judgment for damages on account of a breach of the covenant to convey, nor a decree for specific performance, was given, although the damages were assessed by the jury, and all the facts were found by them which were necessary to entitle the plaintiff to a deed if no demand was requisite. Hence, aside from the question of demand, Amador was entitled, upon the case made by the verdict, either to a judgment for damages or a decree for specific performance; but he got neither. It is clear, therefore, that neither form of judgment was given,

because, in the opinion of the Court, neither kind of relief could be granted without a demand before suit.

Independent of the question of demand, it is contended by counsel for the plaintiffs that it appears from the judgment roll in *Amador* v. *Norris,* and especially from the verdict of the jury, that Amador's cause of action had not accrued, in the opinion of the Judge who tried the case, because of the non-performance by Amador of the contract of the 19th of February, 1852, in the following particular: It seems from the answer of Norris that Amador, at some time previous to the contract of the 19th of February, had sold, and contracted in writing to convey to Norris and one Lynch, a tract of land, three thousand yards long by one thousand yards wide, the same being a part of the league of land reserved to Norris by the contract upon which the action was brought. In his answer Norris avers that the annulment of this contract was included and stipulated in the contract of the 19th of February, and that Amador had not obtained a release of said contract from Lynch, as he was bound to do, and had therefore in this respect, and to that extent, failed to perform the contract of the 19th of February. The jury found as a fact that the contract with Lynch and Norris had been made by Amador as alleged in the answer, and that Amador had not obtained a release thereof from Lynch.

The agreement to annul and make void all contracts existing between them, in general terms, without any particularization, cannot be construed to include contracts to which there were other parties than themselves. To annul such contracts neither Amador nor Norris had the power without co-action on the part of the other parties, and, in the absence of express words to that effect, we cannot say that they intended to do that which obviously they had not the power to do. Besides, the agreement does not contemplate a future annulment of all contracts between them, as contended by counsel for plaintiffs; on the contrary, the agreement itself performs the act of annulment, *ex proprio vigore,* and leaves no further act of cancellation or annulment to be performed. In this particu-

lar, therefore, the agreement was performed the moment it was executed. But admitting the position of the plaintiff upon this subject to be correct, it seems to us that it must be fatal to the present case. If the failure of Amador to obtain a release from Lynch was fatal to his claim for a deed in his action against Norris, it must be equally fatal to the same claim asserted in the present case by the plaintiffs, who are the assignees of Amador's equity, and occupy no better position than he did, for there is no pretense that, up to the present time, Amador has ever obtained the release in question, and performance or non-performance by Amador of the contract of the 19th of February, 1852, is put in issue.

Independent of the question of demand, it is further contended by counsel for the plaintiffs that the "conclusions" of the Court show that the equitable matter contained in the verdict, or in other words, the right of Amador to a deed, was not considered or passed upon by the Court. It is argued with much plausibility that it was the duty of the Judge to frame his conclusions of law so as to embrace and cover all the facts presented for his consideration, or in other words to state all the conclusions of the law, both affirmative and negative, arising upon the facts contained in the verdict, thus separating the different causes of action and rendering a distinct judgment as to each; and auxiliary to this, it is further contended that the pleadings call for two distinct kinds of relief—one legal and the other equitable—and a judgment awarding the first only cannot be held to comprehend and include a denial of the latter; that there was such a misjoinder of causes of action that the Court could not afford relief upon both, and for that reason did not assume to do so, but granted one only, leaving the plaintiff to seek the other in a second action.

The one hundred and forty-eighth section of the Practice Act provides that a judgment of dismissal or nonsuit may be entered in the following cases: First—By the plaintiff himself, at any time before trial, upon the payment of costs, if a counter claim has not been made. Second—By either

party upon the written consent of the other.   Third—By the Court when the plaintiff fails to appear on the trial and the defendant appears and asks for the dismissal.   Fourth—By the Court when upon the trial, and before the final submission of the case, the plaintiff abandons it.   Fifth—By the Court, upon motion of the defendant, when upon the trial the plaintiff fails to prove a sufficient case for the jury.   The one hundred and forty-ninth section provides that in every other case than those mentioned in the one hundred and forty-eighth section the judgments shall be rendered on the merits.

There was no nonsuit taken by the plaintiff before or after the verdict, nor was the particular cause of action in question in any manner withdrawn from the consideration of the Court at any stage of the proceedings, nor was there a judgment without prejudice.   Such being the case, the presumption is that the Court, pursuant to the provisions of the one hundred and forty-ninth section of the Practice Act, requiring it to render a judgment on the merits, having all the facts before it, considered and passed upon them all, and granted to the plaintiff all the relief to which, in the opinion of the Court, he was entitled.   Under such circumstances the silence of the Court must be held to be a denial of further relief.

The fact that both legal and equitable causes of action were joined in the complaint was no impediment in the way of the Court's granting full relief upon both, if warranted by the facts.   Both arose out of the same transaction, and were founded upon the same written instrument, and there seems to be no good reason why, in such cases, the whole matter should not be litigated, and finally settled and determined in the same action.   Admitting that a ground of demurrer existed, it was such as may be waived under the statute by not demurring.   Although a demurrer was interposed, it does not seem to have been pressed to a judgment, and the presumption is that it was withdrawn or abandoned.

Thus, the sufficiency of the plea in bar is made to depend entirely upon the question of demand.   If a demand before suit was necessary, the Court was right in not giving greater

relief than it did, for beyond that Amador's causes of action had not accrued; and *e converso*, if a demand was not necessary, the judgment must be held, in the absence of evidence to the contrary, to have been rendered upon the merits; and although erroneous, yet, never having been reversed, conclusive and binding upon parties and privies.

Touching the obligations of vendor and vendee, under a contract for the sale and conveyance of land, the rule in England seems to be that the purchaser, upon payment of the purchase money, must prepare the deed at his own expense and tender it to the vendor for execution, and until that has been done the vendor is not in default. But this rule appears to be founded upon a custom among conveyancers, which grew out of the complications in which modern titles in that country were involved, by the introduction of many modifications of estates which were unknown to the common law, rather than upon any legal principle disassociated from practice. By these complications an abstract of the title was made necessary for the purpose of the contract of sale. This abstract was furnished by the vendor at his own expense, and the vendee then submitted it to his counsel for inspection, who thereupon prepared the conveyance, which was afterwards tendered by the purchaser to the vendor for execution. In time this became the uniform practice among conveyancers, and early received at the hands of the Courts a favorable recognition, which ultimately ripened into judicial sanction. (Sugden on Vendors, 308 *et seq.*)

But the necessity for such a custom has never existed in the United States, and the rule growing out of it has never been adopted to any considerable extent. In Arkansas, the purchaser must prepare the deed at his own expense and tender it to the vendor, in accordance with the English rule. (*Byers* v. *Aiken*, 5 Pike, 419.) But in most of the other States it has been held that the vendor, in the absence of any stipulation to the contrary, must be at the expense of preparing the deed and must have it ready when called for. Such is the rule in Massachusetts, Maine and New Hampshire. (*Tinney* v.

*Ashley*, 15 Pick. 546; *Hill* v. *Hobart*, 16 Maine, 164; and *Fairbanks* v. *Dow*, 6 New Hampshire, 266.) The same rule prevails in Pennsylvania, Illinois and Mississippi. (*Sweitzer* v. *Hammel*, 3 Serg. & Rawle, 228; *Buckmaster* v. *Grundy*, 1 Scammon, 310; *Standifer* v. *Davis*, 13 Smedes and Marsh. 48.)

In New York it was formerly held that the purchaser must pay or tender the purchase money and demand a deed, then wait a reasonable time for its preparation and again present himself to receive it, in order to put the vendor in default. (*Hackett* v. *Huson*, 3 Wendell, 250; *Fuller* v. *Hubbard*, 6 Cowen, 13; and *Fuller* v. *Williams*, 7 Cowen, 53.) But that doctrine has since been modified so as to dispense with the second request; and some doubt has been expressed as to the necessity for any demand where the contract calls for the execution of the deed on or before a day certain; but even in such cases a demand has not yet been held to be unnecessary. (*Carpenter* v. *Brown*, 6 Barb. Sup. Ct. R. 147.) In Alabama it has been held that a demand must be made before suit is brought in order to put the vendor in default. (*Smith* v. *Robinson*, 11 Alabama, 840.) In Indiana the earlier doctrine was to the effect that no demand was necessary; but the cases establishing that rule were afterward expressly overruled; and ever since that time it has been held that the vendee must demand his deed in order to put the vendor in default. (*Streets* v. *Andrews*, 2 Blackford, 274.) In our own State, the question does not seem to have been directly decided, but the necessity for a demand appears to have been assumed by Mr. Justice Heydenfeldt in *Goodale* v. *West*, 5 Cal. 339.)

Thus, the general rule appears to be to the effect that the vendee must demand his deed before he can maintain an action at law for a breach of the covenant to convey. And we are inclined to the opinion that this rule does not rest upon precedent and authority only, but finds a more enduring foundation in sound reason and policy. The interests which the vendee acquires under these contracts is a descendible and assignable estate, and may pass through the hands of many persons before the payment of the purchase money, or

the happening of the event upon which the vendor is bound to convey; and the true holder, at the time the vendor becomes liable to perform, may be unknown to both. When such is the case, the vendor cannot, in the nature of things, tender the deed until the unknown holder of the contract presents himself to receive it.

The obligation imposed upon the vendor also descends to his heirs, and attaching itself to the legal title, walks by its side *pari passu* wherever it wanders. And the heirs or assigns of the vendor ought not, in justness and fairness, to receive the first suggestion touching their liability through the process of the law. But independent of these considerations, there is no good reason why the vendor should not be afforded an opportunity to perform without being first subjected to the costs and annoyances of a lawsuit. Nor is any hardship imposed upon the vendee, or his heirs or assigns, by requiring them to give the vendor an opportunity to respond voluntarily to their claim before a resort is had to the compulsory powers of a Court. The rule but exacts the performance of a duty morally due from man to man, and it is to be regretted that the law has not made it applicable to all cases. Were the plaintiff required to apply to his adversary for redress, as a condition precedent to his right to be heard in the Courts, there would be far less litigation, and the good order of society would be less disturbed by judicial contentions. But the power to establish a uniform rule upon this subject has long since passed from the Courts, and the evil, if any exists, can find no remedy except in legislative interposition.

This general rule, however, has its exceptions. The chief office of a request is to perfect the breach and put the vendor in default, and this result may follow from other causes and circumstances as well as from a refusal to comply with an express demand. As, for instance, if the vendor refuses to receive the purchase money when tendered, thereby repudiating his contract, or by his own act prevents the vendee from performing his part of the agreement, or by any adversary steps makes it known that he does not intend to observe and

perform his covenant except upon compulsion, thus in effect refusing in advance of a demand, neither law nor equity imposes upon the vendee the observance of a ceremony thus made idle and fruitless.   Under such circumstances a Court of equity will go so far as to interpose and compel specific performance before the vendee has complied with the contract on his part, when it would be inequitable and unconscientious to allow the vendor to evade his covenant, and will award a decree compelling specific performance within a certain time, provided the vendee shall have before that time performed on his part. (*Davis et al.* v. *Hone*, 2 Schoales and Lefroy, 341 ; *Bourke* v. *Bocquet*, 1 Desaussur, 142 ; and *Washburn and Wife* v. *Dewy*, 17 Vermont, 92.)

Thus it appears there are circumstances which excuse the absence of a demand, and it only remains to determine whether the case of *Amador* v. *Norris* comes within the general rule or forms one of the exceptional cases.   It appears that under the contract of the 19th of February, 1852, Amador and Norris agreed, among other things, to annul all existing contracts between them and submit all matters in difference to two arbitrators, one of whom was to be selected by each.   These arbitrators were to be chosen and to act within a certain time. Each party selected his arbitrator pursuant to the agreement, but they never met.   Amador appeared at the time and place appointed, but, as the jury find, Norris revoked the power of his arbitrator before the time of meeting.   Amador, in perfect good faith, had dismissed his action against Norris for the recovery of the purchase money for the land and the enforcement of his vendor's lien.   But Norris, when called upon and after due notice, as found by the jury, refused to perform the first act required of him under the agreement, and without any apparent reason retraced the steps which he had taken to that end.   This was an act of bad faith on the part of Norris, and was an open violation of the terms of his contract.   From his conduct, it was apparent that he did not intend to abide by his covenants, notwithstanding Amador had in good faith performed on his part.   By the terms of the contract, Norris was to perform

within one month from its date ; yet he not only did not per-form, but, when notified, in the manner pointed out by the contract, he refused to take the first step in the path of obedi-ence to his covenant.    We think this was such an act of bad faith, and such an open disavowal of his obligation on the part of Norris, as to warrant the conclusion that an express demand for further performance would have been fruitless. This view is fully sustained by the answer filed in the case. It contains no complaint on the ground that no demand had been made, nor does it aver a willingness to perform, but defends upon entirely different grounds.

From all the circumstances, we are of the opinion that no demand was necessary in order to enable Amador to maintain an action for damages for a breach of the covenant to convey. So far as his right to maintain an action for specific performance is concerned, it seems no demand was necessary except so far as the right to recover costs was involved.    In *Bruce* v. *Tilson,* 25 N. Y. 197, the Court of Appeals of New York said : " The distinction between an action for a specific perform-ance in equity and a suit at law for damages for non-perform-ance is this—that in the latter the right of action grows out of a breach of the contract, and a breach must exist before the commencement of the action, while in the former the con-tract itself, and not a breach of it, gives the action.    A demand of performance before suit is brought is only important in reference to the costs of the action, and has no bearing upon the merits or the rights of the parties.    But by a demand and refusal the party liable to perform is put in the wrong and in the situation of unreasonably resisting his adversary, and is therefore chargeable with costs.    Costs in equity are always in the discretion of the Court, and whether they are granted or withheld, they are but as incidents to and no part of the relief sought.    A party getting the relief asked may be compelled to pay costs, but nevertheless his cause of action had accrued upon the filing of the bill or the commencement of the suit."

Thus in every point of view it is apparent that the judg-

ment roll in *Amador* v. *Norris* shows that Amador had performed the contract in question on his part before he commenced his action ; that he sought in that action all the relief both at law and in equity to which under the facts of the case he was entitled; that his whole case, without any part of it being withdrawn, was submitted to the jury and he obtained a verdict upon which he was entitled to a judgment for damages, or a decree for specific performance at the hands of the Court, as he might elect, or as the Court might determine. Hence the whole case was tried and submitted upon its merits and a judgment rendered thereon.    That the judgment was erroneous there is no doubt; but, whether so or not, is wholly immaterial so far as the question under consideration is concerned.    Until reversed it is conclusive upon parties and privies.

The conclusion to which we arrived on the plea in bar renders it unnecessary to pass upon the question as to whether the defendants acquired the legal title to the land in question with notice of the plaintiff's equity.

Judgment reversed and the Court below directed to render a judgment in conformity with this opinion.