JOSEPH GARWOOD v. HENRIETTA M. GARWOOD.

WHO MAY CONTEST ACCOUNT OF ADMINISTRATOR.—The right to appear in a Probate Court and contest the account of an administrator is restricted to persons who are interested in the estate.

INTEREST OF PERSON ASKING TO CONTEST ADMINISTRATOR'S ACCOUNT.—If there is a reasonable doubt as to whether a person who applies to be allowed to contest the account of an administrator has any interest in the estate, that doubt should be resolved in favor of the applicant.

SAME.—However remote or contingent the interest of a person may be, who asks to be allowed to contest an administrator's account, his right to contest should not be denied.

EVIDENCE AS TO INTEREST OF ONE CONTESTING ADMINISTRATOR'S ACCOUNT.—The Probate Court is not bound by the statement in the petition of an applicant to contest an administrator's account, that he has an interest in the estate, but may take testimony as to whether he has any interest.

PAROL TESTIMONY TO IDENTIFY PERSONS NAMED IN A RECORD.—When a record of a former judgment is admitted in evidence, parol testimony is also admissible to show the identity of the parties named in the record with those named in the pending action.

IDENTITY OF NAMES SHOWS IDENTITY OF PERSONS.—When a former judgment is received in evidence, the identity of the names in the judgment with those in the pending action is *prima facie* sufficient to establish the identity of persons.

JUDGMENT OF PROBATE COURT ON ISSUANCE OF LETTERS OF ADMINISTRATION.—Where the husband dies without living issue, and leaves his wife pregnant, and she is afterwards delivered of a child, and then applies for letters of administra-

tion upon the estate of the child, and the father of the deceased contests the issuance of letters on the ground that the child was not born alive, and the issue is tried, and the Probate Court finds that the child was born alive, and grants the letters, the judgment of the Probate Court is evidence upon the question as to whether the child was still-born, in a subsequent application of the father of deceased to contest the account of the administrator, and is conclusive upon that question.

DOCTRINE OF *res adjudicata* APPLIES TO PROBATE COURTS.—The doctrine of *res adjudicata* applies to judgments and decrees of the Probate Court as well as to those of any other judicial tribunal.

RULE AS TO CONCLUSIVENESS OF JUDGMENTS.—The rule that a judgment of a Court having jurisdiction directly upon the point in controversy is as a plea, a bar, and as evidence conclusive between the same parties and their privies, is restricted to facts directly in issue, and does not embrace facts which may be in controversy but rest in evidence.

APPEAL from the Probate Court, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Sloan & Provines*, for Appellant.

The record of the proceedings in the matter of the estate of Joseph M. Garwood, deceased, was not conclusive in this case that Joseph M. Garwood was born alive; nor that, if born alive, he was the son of Joseph S. Garwood. (*Blackham's Case*, 1 Salkeld, 290 ; *Hibshman* v. *Dulleban*, 4 Watts, 190–192 ; *Duchess of Kingston's Case*, 2 S. Lead. Cas. 424–433.)

*W. & C. Bartlett*, for Respondent.

The Court did not err in hearing evidence as to the interest of the applicant in the estate of Joseph S. Garwood, deceased. (Dayton on Surrogate, 3 Ed. 488 ; *Gratacap* v. *Phyfe*, 1 Barb. Ch. 485 ; 1 Brad. Sur. Rep. 29 ; 1 Starkie on Ev. 188 ; 1 Green. on Ev., Sec. 538 ; 2 Smith's Leading Cases, 439 ; 4 Phil. on Ev., C. & H.'s Notes, Part II, Note 26.)

Parol proof was admissible to connect the record with the present proceedings. (*Campbell* v. *Bates*, 3 Com. 173 ; *Young* v. *Runnell*, 2 Hill, 478 ; *Coit* v. *Zeigler*, 16 Sargt. & Rawle, 282–285 ; *Cortzer* v. *Russell*, 16 Ib. 81 ; 4 Phil. on Ev., C. & H.'s Notes, 14, 22, and 84.)

The record in the matter of the estate of Joseph M. Garwood, deceased, is conclusive proof in these proceedings of the fact that said Joseph M. Garwood was born alive. (*Estate of Emma Hughes*, 1 Brad. Sur. Repts. 103 ; *Parker* v. *Standish*, 3 Pick. 288 ; *Young* v. *Black*, 7 Cranch, 565 ; *Miller* v. *Maniee*, 6 Hill, 114 ; *Eastman* v. *Cooper*, 15 Pick. 276; *Gardner* v. *Buckbee*, 3 Cowen, 120 ; *Perkins* v. *Walker*, 19 Vt. 144 ; *Hayes* v. *Gudykunst*, 1 Jones, 221 ; *Laurence* v. *Vernon*, 3 Sumner, 20 ; *White* v. *Coatsworth*, 2 Selden, 137 ; 2 Smith's Leading Cases, H. & W.'s Notes, 5th Am. Ed. 674; 4 Phil. on Ev., C. & H.'s Notes, Note 12.)


By the Court, SANDERSON, J.

This is an appeal from an order of the Probate Court of the City and County of San Francisco, denying to Joseph Garwood the right to appear and contest the settlement of the first annual account of Henrietta M. Garwood as administratrix of the estate of her husband, Joseph S. Garwood, deceased.

The facts of the case are substantially as follows :

On the 22d of February, 1863, Joseph S. Garwood died intestate, seized and possessed of real and personal property in this State of considerable value, leaving him surviving his wife, Henrietta M. Garwood, the respondent in this case, but leaving no issue then born.

On the 10th of March, 1863, letters of administration upon the estate of the said intestate were issued by the Probate Court of the City and County of San Francisco to the said Henrietta M. Garwood.

At the time of her husband's death Henrietta M. Garwood was pregnant, and afterwards (on the 18th of March, 1863) gave birth to a male child, called in this case Joseph M. Garwood. This child, if born alive, died immediately, or soon after his birth. Assuming that the child was born alive, and that he died seized and possessed of real and personal property, his mother applied to the Probate Court for letters of

administration upon his estate.   Her application was by peti-
tion in the usual form, and was contested by Joseph Garwood,
the appellant in this case, who alleged that he was the father
of Joseph S. Garwood, deceased, and that the said Joseph
S. Garwood died without issue, leaving him surviving his
widow, the said Henrietta M. Garwood, and that there never
was in being any such person as Joseph M. Garwood, as
alleged in the application for letters of administration, and
therein claimed to be the son of the said Henrietta M. Gar-
wood.

Upon the issue thus formed, as to whether Joseph M. Gar-
wood was alive when born, a trial was had in the Probate
Court and witnesses were called and examined, both parties
appearing by counsel, and thereafter, on the 23d of Septem-
ber, 1863, all parties being present, in person or by counsel,
the Court filed its finding of facts and conclusions of law, to
the effect, among other things, that the child Joseph M. Gar-
wood was born alive and died seized and possessed of real and
personal estate, and that the respondent, Henrietta M. Gar-
wood, was entitled to the administration of said estate ; and it
was ordered that the appellant's objections to her appoint-
ment as administratrix be held for naught and that letters of
administration be issued to her, which was accordingly done.
All of which appears of record.   No appeal was taken and the
time for such a step had passed prior to the institution of the
proceedings at bar.

Subsequently, on the 5th day of September, 1864, Henri-
etta M. Garwood filed her first annual account as administra-
trix of her deceased husband, Joseph M. Garwood, and a day
was appointed for its examination and settlement; at which
time the appellant, Joseph Garwood, appeared, and by peti-
tion in writing, asked to be allowed to contest the account,
alleging among other things that he was interested in the
estate of the said Joseph S. Garwood, deceased ; that he was
the father and heir-at-law of the said Joseph S. Garwood;
that the said Joseph S. Garwood died without issue except
that a posthumous child was born to him but was not born

alive. So, whether he was so interested in the estate of Joseph S. Garwood, so far as there was any controversy, depended entirely upon the question of fact as to whether Joseph M. Garwood was born dead or alive.

This application of Joseph Garwood to be allowed to appear and file exceptions to and contest the account of the said Henrietta M. Garwood, was resisted by her, who pleaded, in bar of his alleged right, the finding and judgment of the Court in the matter of her application for letters of administration upon the estate of her son, Joseph M. Garwood, above referred to, specially alleging that the fact as to whether Joseph M. Garwood was born alive, was directly in issue and litigated between the present parties in that proceeding. Upon the issues thus formed a trial was had. Upon the question as to whether Joseph M. Garwood was born alive, the respondent offered in evidence the record in her application for letters of administration upon his estate, and claimed that the same was conclusive upon that question. This evidence was objected to by the appellant, but was admitted by the Court and held to be conclusive of the question as to whether the child was born alive, but as having no further effect. The respondent then offered evidence of her marriage with the intestate and that the said child was the lawful issue of that marriage, (which last fact was admitted by the appellant,) and also evidence of the identity of the parties concerned, which was also excepted to by the other side. No evidence was introduced by the appellant. The Court found that the appellant had no interest in the estate of Joseph S. Garwood; and so his petition was denied and hence this appeal.

*Contesting account of an administrator.*

It is first claimed that the Court below erred in allowing the right of the appellant to appear and contest the correctness, legal or actual, of the account, to be questioned at all by the administratrix, because, as it is alleged, the sworn petition of the appellant was of itself sufficient to establish his right to do so without further inquiry.

In support of this proposition counsel who have charge of the appellant's case have failed to produce any authority; and when we remember that they are distinguished for their industry and never fail to fortify their points by authority whenever, by the most patient research, such authority can be found, we may well doubt if adjudged cases exist by which the position in question can be sustained. But be that as it may, we are satisfied that the point in question is without merit on the score of principle. The language of the two hundred and thirty-fourth section of the Practice Act is, " that any person interested in the estate may appear and file exceptions in writing to the account and contest the same," not that any person that way inclined may do so.

It is the duty of the Court to carefully scrutinize the accounts of executors and administrators and correct all errors founded in law or fact; and it is the right of all the creditors and distributees of the estate to be present and, if so disposed, contest the same; but the right so to do is expressly restricted to them. There is in this respect no distinction between this and like cases and other suits or legal proceedings. The rule is universal in all legal proceedings that parties not interested have no concern in them and cannot be allowed to intermeddle. If, then, a party seeks to interpose and participate in or originate a judicial controversy, and his right to interfere is denied, the first duty cast upon the Court is to determine whether such person has any interest whatever in the subject matter pending before it, and if it turns out he has none, he must be declared an intruder and excluded from any further participation.

Suppose the administratrix in this case had denied the right of the appellant to intermeddle, upon the ground that he was not the person whom he represented himself to be, but was an impostor, falsely representing himself to be the father and heir-at-law of the intestate—could there have been any doubt as to the power and duty of the Court in the premises? We think not. A contrary rule might lead to gross abuses, without any corresponding advantages, and would entirely subvert

all our notions of the orderly conduct of judicial investigations. Such investigations are sufficiently guarded when confined to the inspection and participation of those who are actually interested in the result.

Doubtless, in a case like the present, which is to a certain extent a preliminary proceeding, the question rests very much in the discretion of the Court, and any doubt as to the question of interest ought to be resolved in favor of the petitioner; and however remote or contingent his interest may be, or, in other words, if he has the appearance of an interest, his right to contest ought not to be denied. (Dayton on Surrogates, 452.) But the Court undoubtedly has the power to determine the question of interest, if controverted, and is not bound to accept as conclusive the *ex parte* statement of the party claiming the right to contest. The Court may therefore not only take testimony for the purpose of determining the question, but in our judgment is bound to do so. Whatever discretion the Court may have in the premises ought not to be exercised until after the evidence is in. If then it be doubtful whether the party is interested, the Court should allow him to appear, but not otherwise.

*Judgment of Probate Court on appointment of administrator as evidence, and as a bar on the issues there tried.*

But the more important question involved in the case relates to the admissibility of the record in the matter of the estate of Joseph M. Garwood, for the purpose of proving that he was born alive.

So far as the admissibility of the parol evidence offered in connection with the record for the purpose of establishing the identity of the parties named in that record with those named in the record in the case pending before the Court, there can be no doubt, although in our judgment such evidence was not needed, for the identity of the names was *prima facie* sufficient to establish the identity of the persons. (*Carleton* v. *Townsend*, 28 Cal. 219; *People* v. *Thompson*, 28 Cal. 214.) The effect of the evidence was not, as suggested by counsel, to add

to the record, but merely to show its connection with the pending controversy by establishing the identity of the parties and the subject matter. In that respect, whatever the record fails to demonstrate may be shown by evidence *aliunde.* (*Gray* v. *Dougherty*, 25 Cal. 272.)

We are of the opinion that the finding and judgment of the Court in the matter of the application of the respondent for letters of administration upon the estate of her son Joseph M. Garwood were competent evidence upon the question as to whether he was still-born, and that the same, never having been reversed, were conclusive upon that question, upon the well established principle that matters which have been once judicially determined cannot be again drawn into controversy between the same parties.

The judgment of a Court having jurisdiction directly upon the point in controversy is, as a plea, a bar; and as evidence, competent and conclusive as between the same parties and their privies; not only where the subject matter is in all respects the same, but where the point comes incidentally in question in relation to a different matter. (*Gray* v. *Dougherty*, 25 Cal. 272; *Caperton* v. *Schmidt*, 26 Cal. 493.) This rule, however, is restricted to facts directly in issue, and does not embrace facts which may be in controversy, but rest in evidence and are merely collateral. A fact or matter in issue is that upon which the plaintiff proceeds by his action, and which the defendant controverts in his pleadings, while collateral facts are such as are offered in evidence to establish the matters or facts in issue; and notwithstanding they may be controverted at the trial, they do not come within the rule. (*King* v. *Chase*, 15 N. Hamp. 16.)

This doctrine of *res adjudicata* applies to the judgment and decrees of the Probate Court as well as to those of any other judicial tribunal. (2 Smith's Leading Cases, 522, *et sequens;* *Blackham's Case*, 1 Salkeld, 290.)

That the fact whether Joseph M. Garwood was born alive or not was directly put in issue, tried and found in the matter

of the application for letters of administration upon his estate, does not admit of debate. It is apparent upon the face of the record, without the aid of evidence. *aliunde.* It was not only expressly put in issue by the petition and remonstrance, but it was necessarily the controlling issue in the case. Moreover, it was the only issue about which there was any controversy, and lay at the foundation of the jurisdiction of the Court, which has jurisdiction over the estates only of such persons as are dead, and it cannot be said that a person has died who was never in *esse.* It was, therefore, not only a fact in issue, but the principal fact upon which the result of the proceedings then before the Court depended. It was not only a question which the Court had jurisdiction to try, but it was a question which the Court *ex necessitate rei* was compelled to determine before a judgment could be pronounced. It being so, and the parties being the same in both proceedings, we have a case clearly within the rule under consideration.

This case is readily distinguishable from *Blackham's Case,* 1 Salkeld, 290, cited by counsel for appellant. That was trover. The plaintiff proved the goods to have been in his possession, and to have been taken away by the defendant. The defendant proved the goods to have belonged to one Jane Blackham in her lifetime, and that he had taken out letters of administration on her estate, and so was entitled to the possession of the goods. Thereupon the plaintiff proved that some few days before her death Jane Blackham was actually married to him. The foregoing is a full statement of the case as reported. So, whether the fact of the plaintiff's marriage with Jane Blackham was put in issue, tried and determined in the Spiritual Court on the application of the defendant for letters of administration, did not appear. The defendant, however, insisted that the grant of letters to him was conclusive that no such marriage had in fact taken place, because the Spiritual Court could not have granted letters to him except upon the supposition that there was no such marriage. But Holt, C. J., said: "A matter which has been directly determined by their (the Spiritual Court) sentence cannot be

gainsaid.   Their sentence is conclusive in such cases, and no evidence shall be admitted to prove the contrary ; but that is to be intended only in the point directly tried ; otherwise it is, if a collateral matter .be collected or inferred from their sentence, as in this case, because the administration is granted to the defendant ; therefore, they infer that the plaintiff was not the intestate's husband, as he could not have been taken to be, if the point there tried had been " married or unmarried," and their sentence had not been " married."   From which language we understand Lord Holt's meaning to have been that if the fact of the plaintiff's marriage with the intestate, Jane Blackham, had been put in issue at the time of the defendant's application for letters of administration upon her estate, and had been then tried and determined by the Spiritual Court, the finding and sentence of that Court would have been conclusive ; but that, inasmuch as such was not shown to have been the case, the fact of marriage could not be inferred from the naked grant of administration, which is on all fours with the following language of Sir W. DeGrey, in the *Duchess of Kingston's Case* : " But neither the judgment of concurrent or exclusive jurisdiction is evidence of any matter which came collaterally in question, though within their jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment," and · is also in harmony with the language of this Court in the case of *The People* v. *Frank*, 28 Cal. 507, where we had occasion to say : " That the law does not favor estoppels, and a party cannot be precluded from giving evidence touching matters directly or collaterally involved in the issue upon the mere suspicion that they have already been determined against him by competent judicial authority ; before that can be done it must appear with certainty that such matters have been so determined."   A construction similar to the foregoing was given to the language of Lord Holt in *Blackham's Case* by the Lord Chancellor in *Barrs* v. *Jackson*, 19 Eng. Ch. R. 587 ; 1 Phillips, 588.)

The case of *Bouchier* v. *Taylor*, 4 Brown's Cases in Parlia-

ment, 708, was a bill in equity by Taylor and wife against Bouchier and others, praying an account to them for all the personal estate of one Ann Millington who died intestate, and upon whose estate Bouchier had been granted letters of administration. Taylor and wife claimed under one Alice Merchant, who, as they alleged, was cousin-german and next of kin to Ann Millington. It appeared from the pleadings, among other things, that on the death of Ann Millington, Bouchier and his sisters, being cousins-german once removed, and, as they supposed, the only next of kin to the intestate, made application to the Prerogative Court of the Archbishop of Canterbury for a grant of letters of administration upon her estate to Bouchier. That this application had been contested, among others, by Alice Merchant, who had there alleged that she was cousin-german and next of kin to the intestate, and therefore entitled to the administration. That the truth of that allegation had been tried by the Prerogative Court and found against her, and that a decree had been pronounced to the effect that Bouchier was the lawful cousin-german once removed and the next of kin of Ann Millington, and therefore entitled to administration, which was accordingly granted to him. Upon this state of facts Lord Chancellor Bathurst directed an issue as to whether Alice Merchant was the cousin-german and next of kin of Ann Millington at the time of her death. From this order Bouchier appealed to the High Court of Parliament, and it was contended on his behalf, among other things, that the sentence of the Prerogative Court, by which letters of administration had been granted to Bouchier, was conclusive upon the issue directed by the Lord Chancellor, and that the Court of Chancery had no power to direct it to be tried, but was bound by the sentence of the Prerogative Court. The contrary doctrine was contended for by the respondent. The judgment was that the order of the Court of Chancery directing the issue be reversed, and the respondent's bill dismissed. So it was held that the sentence of the Prerogative Court was conclusive of the question as to whether Alice Merchant was

the cousin-german and next of kin of Ann Millington at the time of her death.

In *Barrs* v. *Jackson*, 1 Young and Collyer, 585, 20 Eng. Ch. R. 585, Vice Chancellor Knight Bruce doubted whether the question of the conclusiveness of the sentence of the Prerogative Court was the point upon which the House of Lords decided *Bouchier* v. *Taylor*, claiming that their judgment could be sustained upon other grounds, and did not therefore necessarily embrace that question. But the Lord Chancellor, in the same case, on appeal from the decision of the Vice Chancellor, came to the opposite conclusion. (*Barrs* v. *Jackson*, 1 Phillips, 582, 19 Eng. Ch. R. 581.)

*Barrs* v. *Jackson*, *supra*, was like in facts the case of *Bouchier* v. *Taylor*. One Harriet Martindale Smith died unmarried and intestate. Suit was instituted in the Prerogative Court for administration upon the estate. The defendant Jackson claimed the administration on the ground that he was the second cousin and next of kin of the intestate, and Mrs. Barrs, the plaintiff, claimed it upon the ground that she was the niece and next of kin of the intestate. The Prerogative Court decided in favor of Jackson, and the sentence was that administration should be granted to him as next of kin. Afterward, the suit in question for distribution was instituted in the Court of Chancery, in which Mrs. Barrs claimed the residuary estate of the intestate as her niece and next of kin. The defendant Jackson, in his answer, pleaded in bar the sentence of the Ecclesiastical Court, and alleged that the question in issue was the sole question in that Court and was there decided in his favor. The Vice Chancellor held, however, that the judgment of the Ecclesiastical Court was not conclusive, having first come to the conclusion, as already stated, that that point was not decided in *Bouchier* v. *Taylor*. But on appeal the Lord Chancellor held that the point had been decided in *Bouchier* v. *Taylor*, and that he was bound by that decision, whatever his individual opinion might be, and that the sentence of the Ecclesiastical Court was therefore conclusive upon the question as to which of the parties was next of kin to the intestate.

It is claimed in this case that the decision of the Vice Chancellor was correct, and that the decision of the Chancellor would have been the same way but for the case of *Bouchier* v. *Taylor*, which, although binding upon him, is not binding upon this Court; and we are, therefore, urged to adopt the ruling of the Vice Chancellor as being founded on the better reason. It is true that the case of *Bouchier* v. *Taylor* is, as to this Court, only authority upon the question, and is not binding upon us; but without pausing to consider whether the ruling of the Vice Chancellor is founded on the better reason, we are of opinion that this Court stands in the same relation to the question involved in which the Lord Chancellor stood in *Barrs* v. *Jackson*. What *Bouchier* v. *Taylor* was to him, *Gray* v. *Dougherty*, and more especially *Caperton* v. *Schmidt*, are to us. In those cases we have carried the doctrine in question to the full extent to which it was carried in *Bouchier* v. *Taylor*.

Order affirmed.

Mr. Justice SHAFTER, being disqualified, did not participate in the decision of this case.