Ashburn, J.
In 1846, the legislature of Kentucky granted a charter to a company styled “ The Covington and Cincinnati Bridge Company.” The object of the company was to. construct a bridge across the Ohio river, between the cities of Covington and Cincinnati. In 1849, *236 the general assembly of Ohio “ enacted ” that said company “ shall be, and the same is, hereby made a body corporate and politic of this state,” etc. From time to time afterward, enabling acts were passed by the legislative au-' thorities in Kentucky and Ohio. In our view of the case, it does not become necessary to give construction to these acts.
By the charter, the capital stock of the company was $300,000, divided into 3,000 shares of $100 each. Under the acts alluded to, the company was allowed to increase its capital stock, and to make a portion of it preferred stock. The act authorizing the issuing of preferred stock was passed February 5, 1861, and approved by the general assembly of Ohio, April 3, 1861. In 1856, Sargent subscribed for five shares of the stock of the company, and agreed to pay therefor $500 upon the completion of the bridge, and the company agreed to deliver to him five shares of its stock. In January, 1867, the bridge was completed, and Sargent notified that the money on his stock subscription was due. In May, 1868, the company sued Sargent on his subscription ; recovered a judgment for $578.96 and $64.05 costs, and collected it on execution. A motion for a new trial was made and overruled, and a bill of exceptions embodying all the testimony offered on the trial was signed by the judge, and filed.
Sargent, to recover back the money paid on this judgment, prosecutes this action, alleging, among other things, that the company had failed and neglected to issue to him a certificate for the five shares of stock; and having issued a greater number of shares of stock than authorized by its charter, the company was unable to issue to him a certificate for the five shares of stock to which he was entitled. The answer denies these allegations. In his reply, Sargent impliedly admits that, on his demand, a certificate for five shares of the company’s stock was offered to him; but alleges it was not the kind of stock he demanded and was entitled to, etc. In an amended answer, the company alleges certain authority granted to it in regard to the further is *237 sue of stock, and that five shares of its stock, which he had subscribed for, was tendered to Sargent, and he refused to aceept it.
On the trial judgment was rendered in favor of Sargent for $631.06 and costs, motion for new trial overruled by the court, and a bill of exceptions embodying all the testimony ordered on to the files. On the trial numerous items of testimony were offered, and among others the record of the action in the case of the company against Sargent, in which the company had recovered a judgment against Sargent on his subscription for five shares of the company’s stock. In that record is found a bill of exceptions, embracing all the testimony on that trial. We have then in the record before us all the testimony heard and admitted on the trial of each action. Erom an examination of the subject-matter of the action involved in the Covington and Cincinnati Bridge Company v. Sargent, and the testimony admitted on the trial, we are satisfied that the same facts and principles of law that should determine the rights of the parties in this action would have determined them between the same parties in the former action.
Several errors are assigned against the judgment and proceedings of the court. We do not deem it necessary to consider any but the third:
“ That the finding and judgment of said Superior Court are contrary to law.”
This must be answered in the affirmative. "When the facts which constitute the cause of action or defense have been, between the same parties, submitted to the consideration of the court, and passed upon by the court, they can not again be the proper subjects for an action or defense, unless the finding and judgment of the court is opened up or set aside by proper authority. This principle of law extends still further in 'quieting litigation. A party can not re-litigate matters which he might have interposed, but failed to do in a prior action between the same parties or their privies, in reference to the same subject-matter. And if one of the parties failed to introduce matters for the *238 consideration of the court that he might have done, he will be presumed to have waived his right to do so. 30 Iowa, 433; 13 Ohio St. 283 ; 1 Johns. Cas. 436; 25 Cal. 266.
If a party fails to plead a fact he might have plead, or makes a mistake in the progress of an action, or fails' to prove a fact he might have proven, the law can afford him no relief. "When a party passes by his opportunity the law will not aid him. In Ewing v. McNairy, & Clafflin, 20 Ohio St. 322, the judge says: “By refusing to relieve parties against the consequences of their own neglect it seeks to make them vigilant and careful. On any other principle there would be no end to an action, and there would be an end to all vigilance and care in its preparation and trial” The same principle is well settled.in numerous authorities. See 3 Comst. 511; 9 Wis. 23; 5 Sanf. 135.
I can not better express this principle of law than to use the words of Radcliff, J., in the case of LeGuen v. Gouverneur & Kemble, 1 Johns. Cas. 492: “ The general principle, that the judgment or decree of a court possessing competent jurisdiction shall be final as to the subject-matter thereby determined, is conceded on both sides, and can admit of no doubt. The principle, however, extends further. It is not only final as to the matter actually determined, But as to every other matter which the parties might litigate in the cause, and which they might have had decided. The reasons in favor of this extent of the rule appear to me satisfactory; they are found in the expediency and propriety of silenciug the contentions of parties, and of accomplishing the ends of justice, by a single and speedy decision of all their rights. It is evidently proper to prescribe some period to controversies of this sort; and what period can be more fit and proper than that which affords a full and fair opportunity to examine and decide all their claims ? This extent of the rule can impose no hardship. It requires no more than a reasonable degree of vigilance and attention; a different course might he dangerous and often oppressive. It might tend to unsettle all the determinations of law, and open a door for infinite vexation. This *239 reasoning is founded in good sense and supported by the weight of authority.”
When we apply these principles of law to the subject-matter and facts of the case they are decisive of the rights of the litigants. The parties are the same; the subject-matter of both actions was the stock and the payment of it. The testimony (excepting the record in the former case), was as applicable in the one case as in the other. Sargent claims he can recover because the company can not comply with its part of the contract'. If this was true as a fact, and of legal consequence in November, 1869, it was equally true as a fact, and had the same legal significance in May, 1868. If the facts connected with the transactions of the company were of such a kind and force in 1869 as to authorize a judgment for Sargent then, the same facts, properly presented in the form of pleading and evidence, would have defeated the company’s recovery of a judgment in 1868. The facts developed in this action show no such change in the relation of these parties, one to the other, between May, 1868, and November, 1869, as to affect their legal rights in that period toward each other. We are of opinion that, in an action where a party is called upon to make good his cause of action or defense, he must do so by all the lawful means within his control; and if he fails to do so, purposely or negligently, it will not afterward be permitted him to re-litigate the same matters between the same parties, nor to deny the correctness of the final determination.
No right secured to parties by law, touching counterclaim, offset, or cross-actions is intended to be affected by the ruling herein.
Judgment reversed, and action remanded to the Superior Court of Cincinnati.
Scott, -Chief Judge, Day, Wright, and Johnson, JJ., concurred.