[No. 11509. In Bank. — June 27, 1887.]

## ALHAMBRA ADDITION WATER COMPANY, APPELLANT, *v.* SOLOMON RICHARDSON ET AL., RESPONDENTS.

STATUTE OF LIMITATIONS — PRESCRIPTIVE RIGHT — DEFENSE OF — OBJECTION TO INSUFFICIENCY OF PLEADING — APPEAL. — An objection that the averments of the answer are insufficient to raise the affirmative defense of a prescriptive right acquired under the statute of limitations will not be considered on appeal, where no such objection was made in the lower court, and the case was tried upon the theory that the answer was sufficient.

ID. — PRESCRIPTIVE RIGHT, HOW PLEADED. — In an action to maintain a riparian right to water, a defense of a prescriptive right of diversion is sufficiently pleaded by setting up the section of the Code of Civil Procedure under which the right was acquired.

ID. — FINDINGS — PROBATIVE FACTS. — In a finding upon the issue raised by a plea of the statute of limitations, the facts found need not necessarily be stated in the language of the pleadings. If probative facts are found from which the court can declare that the ultimate facts necessarily result, the finding is sufficient.

ID. — SPECIAL VERDICT — HOW CONSTRUED. — A special verdict of a jury upon various questions submitted to them should be read together; and if the finding upon a particular question be doubtful or obscure, reference may be had to the context for the purpose of ascertaining the true meaning. Findings should be so construed as to avoid a contradiction if it can reasonably be done.

ID. — OBJECTION TO FORM OF VERDICT. — An objection to the form of a special verdict must be taken before the verdict is received and recorded; otherwise, the objection will not be considered on appeal.

ID. — CONFLICT OF EVIDENCE. — Where the evidence is substantially conflicting, the findings will not be set aside on the ground that they are not supported by the evidence.

ID. — RIPARIAN RIGHTS — PRESCRIPTIVE RIGHT OF DIVERSION — FINDINGS. — The action was brought to restrain the defendants from diverting the waters of a natural stream. The defense was a prescriptive right of diversion acquired under the statute of limitations. On the issue so raised

various questions were submitted to the jury, who returned a special verdict thereon, in addition to which the court filed supplementary findings. On a review of the findings, *held*, that the same were not contradictory, and were supported by the evidence, and sufficient to show that the defendants had acquired a prescriptive right by adverse user to a definite portion of the waters of the stream.

ID. — DECLARATIONS OF GRANTOR — EVIDENCE. — In such an action, where the prescriptive right relied on by the defendants was acquired by them through a user adverse to their grantor of the land on which the water was used, the declarations of the latter with reference to the water, and to the nature of the use of it by the defendants, are not admissible.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Garber, Thornton & Bishop, A. M. Stevens, Graves & Chapman,* and *Glassell, Smith & Patton,* for Appellant.

*Bicknell & White,* and *Wells, Van Dyke & Lee,* for Respondents.

HAYNE, C.—Action to maintain a riparian right to water; defense, a prescriptive right of diversion.

The first point made on behalf of the appellant is that the answer does not sufficiently set forth the prescriptive right relied on. We think the point cannot prevail for two reasons.

In the first place, if it be conceded that the answer is defective, it is a case of mere defects, and not of total absence of averment; and the pleading was treated as sufficient at the trial. Nearly all the defendants' evidence bore more or less directly upon the question of prescriptive right. It was the main question litigated; and in all the voluminous record before us there is not a single objection raising the question of the insufficiency of the pleading. The case was evidently tried on the theory that it was sufficient, and the plaintiff cannot be permitted to raise the question for the first time in the appellate court. (*White* v. *S. R. & S. Q.*

*Co.,* 50 Cal. 419.) It is argued that this decision relates to denials only; but the rule extends to affirmative defenses as well. (*King* v. *Davis,* 34 Cal. 106; *Hutchings* v. *Castle,* 48 Cal. 153; *Pacific Bridge Co.* v. *Kirkham,* 54 Cal. 561.)

But we think the answer is sufficient on another ground. It set up the statute of limitations by reference to sections of the Code of Civil Procedure, in accordance with the provision of section 458 of that code. This was a sufficient pleading of the prescriptive right claimed. The code expressly provides that the statute of limitations may be pleaded in that manner, and a right to property founded upon the statute of limitations is a prescriptive right. According to some writers, the term "prescription" covers both senses in which the word "limitation" has been used, — that is to say, as conferring a right, and as taking away a remedy merely. (See Angell on Limitations, c. 1.) In the case of *Billings* v. *Hall,* 7 Cal. 4, Chief Justice Murray, delivering the opinion, said: "Statutes of limitation are designed to affect the remedy, and not the right or contract. . . . . Prescription is defined by civilians to be a right by which a mere possessor acquires the property of a thing which he possesses by the continuance of his possession during the time fixed by law. . . . . So that the difference between statutes of limitation, as they are known to the courts of common law, and the law of prescription, consists in this: that the one confers a right, and the other takes away a remedy."

But while this doctrine as to the effect of statutes of limitation still obtains with respect to rights resting in contract (*McCormick* v. *Brown,* 36 Cal. 184; *Grant* v. *Burr,* 54 Cal. 300), it has been the settled rule ever since the case of *Arrington* v. *Liscom,* 34 Cal. 365, that the possession of property of the requisite character and time confers a title to the property. (*Cannon* v. *Stockmon,* 36 Cal. 540; *San Francisco* v. *Fulde,* 37 Cal. 352;

*Williams* v. *Sutton*, 43 Cal. 73; *Sharp* v. *Blankenship*, 59 Cal. 289; *Johnson* v. *Brown*, 63 Cal. 393.) So far, therefore, as the title to property is concerned,—or, at all events, so far as the title to real property is concerned, —prescription and limitation are convertible terms; and a plea of the proper statute of limitations is a good plea of a prescriptive right. The language of decisions with reference to water rights has been in accordance with this view. (See *Crandall* v. *Woods*, 8 Cal. 144; *Campbell* v. *West*, 44 Cal. 646; *Cave* v. *Crafts*, 53 Cal. 135.)

But it is contended that there is no finding upon this plea of the statute. There is no finding in the words of the plea. But it is not necessary that the facts should be stated in the finding in the language of the pleading. (*Clary* v. *Hazlitt*, 67 Cal. 286.) Where "probative facts" are found, and the court can declare that the ultimate facts necessarily result from the facts which are found," the finding is sufficient. (*Coveny* v. *Hale*, 49 Cal. 555; *People* v. *Hagar*, 52 Cal. 189; *Osborne* v. *Clark*, 60 Cal. 623.)

Then, do the findings sufficiently set forth the elements of the prescriptive right relied on?

The jury returned answers to various questions put to them in relation to the defendants' use of the water, among which are the following, which, for convenience of reference, we will number as follows, viz.: —

1. "Have the defendants uninterruptedly used any waters from the Kewen Cañon for any period of time? If so, for how long a time, and from what time to what time?"

"A.— Yes; during the time of the occupancy of the defendants."

2. "Have the defendants used any of the waters of the Kewen Cañon under a claim of right? If so, for how long a time, and from what time to what time?"

"A.—Yes; from 1867 to the present time."

3. "Have the defendants peaceably used any of the waters of the Kewen Cañon under a claim of right?"

"A. — Yes."

4. "Did the plaintiff, or its grantor, the Lake Vineyard Land and Water Association, know that the defendants were using any of said waters under a claim of right or adversely?"

"A. — Yes."

5. "Have the defendants exclusively, continuously, and uninterruptedly used any portion of the waters of the Kewen Cañon? If so, from what time to what time?"

"A. — Yes; from 1867 to the present time."

6. "Has the plaintiff and its grantor, the Lake Vineyard Land and Water Association, knowing that the defendants claimed to use any of the waters of the Kewen Cañon adversely, acquiesced therein?"

"A. — Yes."

7. "Did said Wilson [one of plaintiff's predecessors] at all times during his lifetime acquiesce in defendants' use of said water on their said lands?"

"A. — Yes."

8. "Has not the plaintiff and its predecessors known for more than five years prior to the commencement of this action that defendants claimed the water rights, easements, and privileges asserted and claimed in the answer?"

"A. — Yes."

9. "Have or have not defendants and their predecessors for more than twenty years made such claim and asserted and maintained it?"

"A. — Yes; they have."

10. "Has or has not such use during said time been made by defendants openly, notoriously, and under a claim of right, and adversely to all the whole world?"

"A. — Yes; it has."

11. "Have or have not defendants for more than five years prior to the commencement of this action, contin-

uously, notoriously, under claim of right, and adversely to the whole world, used and appropriated upon their said land the water in controversy herein?"

"A. — Yes; they have."

12. "Did defendants, or either of them, ever admit to B. D. Wilson, or to his successors, that their rights to the use of the water of the Kewen or Mill Cañon was dependent upon the wishes of Wilson, or his successors, or was otherwise than absolute?"

"A. — No."

Do these findings sufficiently set forth the elements of a prescriptive right to any portion of the water of Kewen Cañon? The appellant cites the case of *Unger* v. *Mooney*, 63 Cal. 595, as correctly laying down the requirements of an adverse possession. Accepting the statement in the opinion in that case as correct, and applying it to the above findings, we think they are sufficient.

(*a*) The user was actual, open, and notorious. (See findings 11, 10, 5, 2, and 1.) Being open and notorious, it could not have been secret and clandestine. Moreover, it is expressly found that the plaintiff and its predecessors knew of the adverse use (see findings 8, 6, and 4), and acquiesced in it (see findings 7 and 6).

(*b*) It was in hostility to the plaintiff's title. The word "hostility" is not used. But it is found that the use was "adversely to the whole world" (see findings 11 and 10), and "under a claim of right" (see findings 11, 10, 9, 4, 3, and 2).

(*c*) It was under a claim of title as defendants' own. (See findings 11, 10, 9, 4, 3, and 2.)

(*d*) It was exclusive of any other right. This seems to us to follow from the fact that it was under a claim of right, and adversely to the whole world, as shown above. But in addition to this, the word "exclusively" is used. (See finding 5.)

(*e*) It was continuous and uninterrupted. (See findings 11, 5, and 1.)

The fallacy of the argument of the ingenious counsel for the appellant is in assuming that each finding must be considered separately,.and that one cannot be "helped out" by the others.   The counsel treats the findings as if they were dug up from the ruins of ancient cities at different epochs.   But we think they must be read together.   That is the rule with reference to the findings of a judge.   "The findings of a court cannot be altogether detached from each other and considered piecemeal.   If a particular finding be doubtful or obscure, reference may be had to the context for the purpose of ascertaining the true meaning."   (*Millard* v. *Hathaway*, 27 Cal. 140, 141; *Kimball* v. *Lohmas*, 31 Cal. 156; *Polack* v. *McGrath*, 38 Cal. 669.)   And we see no reason why the same rule should not be applied to a special verdict.

Reading these findings together, we think they sufficiently show an adverse user of some portion of the water of Kewen Cañon.   What portion ?   This question is answered by other findings, which we will designate as follows:—

(*a*)  "Did the defendants since the year 1870 use the water in question for the purpose of irrigation, domestic use, and stock purposes, at all times when the same was necessary, for such purposes, under a claim of right?"

"A.—Yes."

(*b*)  "What quantity of water is required to irrigate defendants' premises, and for their domestic purposes in the same manner as has been used by them for the five years immediately before the commencement of this action?"

"A.—Two and one third inches."

(*c*)  "During what seasons of the year is water required upon defendants' lands for irrigating purposes, and what quantity of water is required for irrigating purposes only?"

"A.—During all seasons excepting when the soil is moistened by the rains.   Two and one fourth inches."

(d) " What quantity of water is necessary for the domestic use of the defendants?"

"A.—One twelfth inches."

And in its supplementary findings the court found that the defendants are the owners of a quantity of said water " equal to a constant flow of the waters of said cañon of two and one third inches, measured under a four-inch pressure."

. Reading all these findings together, we think they sufficiently set forth a prescriptive right in defendants to a definite portion of the water.

But it is earnestly contended that the findings are contradictory. It is said that the findings as to an adverse user by the defendants are in contradiction of the following findings, viz.:—

" Did J. H. Carpenter during the time he occupied the place known as the Richardson place assert any ownership in any portion of the waters of Kewen Cañon?"

"A.—Yes."

" Did said Carpenter use any of said waters by the permission of and under license from B. D. Wilson?"

"A.—Yes."

The argument is, that if Carpenter's use was by the permission of Wilson, it could not have been adverse to him. But who is Carpenter, and when did he occupy the place "known as the Richardson place"? There is nothing in the findings, or in any other part of the judgment roll, which enlightens us as to these points. It does not help the appellant that the evidence shows who Carpenter is, and when he occupied the place; for the point relates to the findings, and for anything they show to the contrary Carpenter is an entirely irrelevant personage.

It is next urged that the findings as to the adverse user by the defendants and the acquiescence of the plaintiff and its predecessors are in contradiction of the following finding:—

"Have the employees of the plaintiff and its grantors, since the pipe was laid through the Richardson place, claimed and exercised the right to turn the water out of the pipe conveying the same by shutting it off at the head of the pipe?"

"A.— Yes."

When was the pipe "laid through the Richardson place"? The findings are silent upon this point. And unless we can know the time, we cannot say the shutting off of the water had anything to do with the defendant's case. But on looking into the answer we see that the pipe was laid in 1875. But nevertheless we do not think a contradiction in the findings is made out. It would be straining the .finding to say that it means that the employees of the plaintiff and its grantors claimed and exercised the right of shutting off the water *ever* since the pipe was laid. The finding would be true if they claimed and exercised the right for a single day. Now since 1875, when according to the answer the pipe was laid, a period of more than eight years elapsed before the filing of the complaint; and therefore there was ample time for whatever the above finding means to have happened before the defendants' adverse user need commence. There is therefore no necessary conflict between the findings. And we do not think the court should strain the language of a finding to make out a case of conflict. The findings should be reconciled if it can be reasonably done, and be so construed *ut res magis valeat quam pereat.*

The findings, therefore, dispose of the issues, and sufficiently set forth the elements of an adverse user, and are not contradictory. It is contended, however, that they are not supported by the evidence. But the conflict in the evidence was extremely substantial, and therefore the findings cannot be set aside on this ground, although it be conceded that the user did not commence to be adverse until the Wilson deed in 1873.

Many of the arguments on behalf of the appellant are merely reasons why the verdict should have been the other way, and were eminently proper to have been addressed to the jury, but, in view of the conflict in the evidence, cannot be entertained on appeal. Thus, when it is said that a party cannot acquire a right by the use of surplus water which is not needed by the owner, the answer is, that the jury did not believe it was a case of the use of surplus water, and it cannot be said, upon the record, that they were not justified in so finding.

So when it is said that there was no use of a definite quantity of water, the answer is, that the jury and the judge evidently thought that there was, and it cannot be said that there was no evidence upon the point. There was much testimony to the effect that they used what was necessary, and some testimony as to how much was necessary. Part of this was in relation to measurement by inches and pressure.

It must be remembered that the case does not admit of the nicest accuracy of measurement, and the question must be looked at from a practical point of view. Pushed to its logical conclusion, the argument of appellant would prevent the acquirement of a water right by adverse user, except when the party diverted the whole stream, or measured what he used by a meter, — cases which very rarely occur in those parts of the state where irrigation has been practiced, at least until very recently.

So, with reference to the argument that where a permissive use is once established, some point at which it became adverse must be shown. The occupation of Carpenter was before 1867; the defendant Hutchinson bought out his possessory claim to the land, and assuming that Carpenter's use of the water was permissive, there was ample testimony from which the jury were authorized to infer that the use of the subsequent occupants was adverse. With reference to the shutting off of the water subsequent to the laying of the pipe, the de-

fendants' evidence shows that it was done on but a single occasion, and on that occasion Mrs. Richardson went out to the man who did it, and "asked him what in thunder he was meddling with that hydrant for;" and the water was then turned on, and does not appear to have been subsequently interfered with. This does not seem to us to have interrupted the defendants' user.

We do not attach much importance to the change in the mode of conducting the water across the defendants' land. At first it was brought through a ditch. Then the parties agreed to substitute an iron pipe which naturally changed the route to some extent. The change was beneficial to all parties, and the arrangement might have taken place between persons whose title to water was absolute and undisputed without in any degree interfering with the *status* of either. The material thing was the flow of water, and whether it flowed through a ditch or a pipe, or by a direct or circuitous route, does not matter. The evidence as to a license being established on that occasion is negatived by the verdict.

The appellant contends, however, that the court committed an error in law in excluding the declarations of B. D. Wilson, who formerly owned the land of defendants, with reference to the water and the nature of the defendants' use of it. If the controversy had been concerning the land which Wilson had conveyed, the declarations of the grantor would probably have been admissible. But the controversy is not concerning that land. It is concerning water. The defendants cannot claim the water by virtue of the conveyance of. Wilson. Their right to it arises from their use of it, which was a right acquired adversely to Wilson and not through him. Where a right rests upon the statute of: limitations "the disseisor acquires a new title founded. on the disseisin. He does not acquire or succeed to the title and estate of the disseisee, but is vested with a new title and estate founded on and springing from the disseisin." ( *Williams.*

v. *Sutton*, 43 Cal. 73.)   This being the case, the declarations sought to be proven were mere declarations of a party in his own favor, and were properly excluded.

We do not think the appellant's criticisms upon the form of the judgment are well founded.

The foregoing disposes of the main points made.   In the 240 pages of argument filed on behalf of appellant, many points are made which do not require special notice.   Many of them are arguments as to the weight of evidence; some are objections to the form of the verdict which should have been taken before it was received and recorded (*Algier* v. *Steamer Maria*, 14 Cal. 170), and some have no support in the record.

We therefore advise that the judgment and order be affirmed.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, judgment and order affirmed.