## LILLIS et al. v. PEOPLE'S DITCH CO.*

### No. 13,807; April 30, 1892.

#### 29 Pac. 780.

**Res Adjudicata.—In an Action to Enjoin the Diversion of "Any Water"** from a river, and the obstruction thereof by "any" dam, defendant claimed a right, by adverse user, to divert "14,400 inches per second, under a four-inch pressure." It was adjudged that plaintiff's cause of action was barred, the court finding specially that defendant had adversely diverted "one hundred cubic feet per second, under a four-inch pressure." Held, in a subsequent action by plaintiff to enjoin the diversion of a greater quantity of water than "14,400 cubic inches per second," that defendant was not estopped by the first judgment to claim that it had acquired the right to divert more than that quantity, since the special finding in the first action should be construed to mean that it had a right to one hundred miner's feet, equal to fourteen thousand four hundred miner's inches, per second, under a four-inch pressure, the amount intended to be claimed in the answer; and judgment was properly rendered that defendant was entitled to an equivalent quantity, "450 cubic feet of water per second," under the evidence, which showed, in addition to the rate at which the water would flow under such pressure through an aperture of one hundred square feet, that defendant, when taking steps to appropriate the water under Civil Code, section 1415, after posting notices claiming fourteen thousand four hundred cubic inches per second under a four-inch pressure, constructed a ditch of sufficient capacity to carry off seven hundred and seventy-seven thousand six hundred cubic inches, equal to four hundred and fifty cubic feet, per second, rather than fourteen thousand four hundred cubic inches only.

**Judgment—Parol to Explain.—The Judgment in the First Action** being ambiguous, parol evidence as to the capacity of the ditch was admissible to aid in construing it.

APPEAL from Superior Court, Fresno County; J. B. Campbell, Judge.

Action by S. C. Lillis and others against the People's Ditch Company for an injunction. From a judgment for defendant, plaintiffs appeal. Affirmed.

Brown & Daggett (Daggett & Adams of counsel) for appellants; N. O. Bradley, G. E. Lawrence and W. D. Tupper (Bradley & Farnsworth of counsel) for respondent.

*Rehearing granted.

VANCLIEF, C.—The object of this action is simply to enjoin the defendant (a corporation) from diverting from the channel of Kings river, into its ditch in Tulare county, a greater quantity of water than fourteen thousand four hundred cubic inches per second, on the ground that it had been adjudged by the superior court of that county, in a former action between the same parties, that this defendant, as against the plaintiffs, was entitled to divert only that quantity of water. In their complaint in this action the plaintiffs pleaded the former judgment as an estoppel. Judgment herein was in favor of the defendant, and plaintiffs appeal from the judgment, and from an order denying their motion for a new trial, made on a bill of exceptions, which, among other things, contains a copy of the judgment-roll in the former action.

The principal question presented for decision is, what was adjudged in the former action as to the quantity of water to which defendant was entitled? The former action was of the nature of a common-law action on the case, brought by the plaintiffs herein on September 11, 1883, to recover from this defendant damages for the diversion of water from Kings river, to the injury of plaintiffs' riparian rights upon that stream; and, in addition to this, sought equitable relief by injunction against a continuance of the diversion complained of. The plaintiffs' prayer in that action was that plaintiffs recover damages in the sum of $60,000, and that defendant be perpetually enjoined "from diverting any water from the channel of Kings river by means of said ditch or dam, or either of them; and from placing or maintaining in the bed or channel of said Kings river any dam or obstruction; and from interfering in any manner with the free and natural flow of the waters of said stream in their natural channel." The allegations of the complaint in that action, if true, were sufficient to entitle the plaintiffs to all the relief they prayed for. As to the quantity of water diverted, it was alleged that defendant had diverted a large quantity—all the water—so that there was none left flowing in the river below the head of defendant's ditch.

The answer in the former action denied the alleged riparian rights of the plaintiffs; denied that it had diverted any more water from the river than it was entitled to divert; alleged that in 1874 it "acquired the right, and has ever since had,

and still has, the right to divert from said river, and to use for the purposes aforesaid, 14,400 inches per second, under a four-inch pressure, of the waters thereof''; and that in 1875 it constructed across the river ''a dam of sufficient height and strength only to turn into its ditch the quantity of water to which it was and is entitled''; and further alleged a continuous adverse user of its right so acquired during a period of more than five years before the commencement of that action; and further alleged ''that the cause of action set forth in plaintiffs' complaint is barred by the provisions of sections 318, 319, Code of Civil Procedure.'' Upon the issues as to plaintiffs' alleged riparian ownership of lands on the stream below the point of defendant's diversion, the court found for the plaintiffs. But, upon the issues as to the alleged adverse appropriation and user by defendant, the court found that in January, 1874, ''defendant, under the laws of this state, and in conformity therewith, publicly, openly, peaceably, notoriously, and adversely to the plaintiffs and to the whole world, constructed its ditch and dam, as hereinbefore found, and took from the waters of Kings river one hundred cubic feet per second under a four-inch pressure, . . . . and diverted the same into its said ditch, . . . . and has continued so to divert such water from about the 1st day of January, 1874, down to the time of the commencement of this [former] action.'' The finding further proceeds to state all the requisite acts and facts to constitute an adverse user from January, 1874, until September, 1883, and concludes as follows: ''Wherefore, as conclusions of law, the court finds that plaintiffs' cause of action is barred by the statute of limitations, and that they are not entitled to recover anything, but that defendant is entitled to recover its costs herein, taxed at $382.89. Let judgment be so entered.'' Accordingly, the judgment in the former action was simply ''that plaintiffs take nothing by this action,'' and that defendant recover its proper costs. In the present action the court found as facts that, continuously from 1874 until the commencement of the former action, the defendant diverted from the river, and conducted through its ditch, adversely to the plaintiffs, four hundred and fifty cubic feet of water per second, and that it never had diverted more than that quantity at any time before the commencement of this action (June 9, 1888), ''or any

greater quantity of water than that which it had always claimed that it appropriated and had acquired the right to divert prior to said year 1884''; and as conclusions of law found ''that it is entitled to take and divert from said Kings river, as against plaintiffs, four hundred and fifty cubic feet of water per second; that plaintiffs' cause of action is barred by the statute of limitation; and plaintiffs are not entitled to recover anything, but the defendant is entitled to recover its costs herein incurred. Let judgment be entered accordingly''; and judgment was so entered. The evidence was abundantly sufficient to justify the finding of these facts, and these facts justified the conclusions of law. But appellants claim that the former judgment estopped the defendant from claiming or proving a right to more than one hundred cubic feet of water per second, because, they say, the findings of fact in the former action limited defendant's right to one hundred cubic feet per second.

Whether or not the former judgment was merely erroneous is not in question here, although, if uncertain, it may be construed for the purpose of ascertaining what was expressly, or by necessary implication, adjudged. Code of Civil Procedure, section 1908, subdivision 2, provides that, in cases of this kind, ''the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest.'' And section 1911 declares, ''That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily, included therein or necessary thereto.'' These sections of the code are in harmony with the weight of authority in other states: Freeman on Judgments, sec. 256. The former judgment was expressly based solely upon the defense that plaintiffs' cause of action was barred by the statute of limitations; and necessarily so, because all other issues were expressly decided in favor of plaintiffs. Besides, this defense is a confession and avoidance of plaintiffs' cause of action.

Section 458 of the Code of Civil Procedure permits this defense to be pleaded by mere reference to the sections pleaded, without stating the facts constituting the defense; which facts, however, are implied in that form of the plea, and, if controverted, must be proved by defendant; and, being new matter

32

constituting a defense, they are deemed controverted: Code Civ. Proc., sec. 462. The principal fact constituting this defense, thus implied in the plea, and controverted by the implied replication, is the uniform and continuous adverse user by defendant during a period of five years, coextensive with the greatest quantity of water diverted at any time during that period. In other words, the issue raised by the implied replication to the plea extends over and covers all diversions of water by defendant during that period, and a general finding by the court "that plaintiffs' cause of action is barred by the statute of limitations" is sufficient (Oakland Gaslight Co. v. Dameron, 67 Cal. 663, 8 Pac. 595), and necessarily implies all that is implied in the plea, viz., all the facts required to constitute a complete defense, including the requisite adverse user to give title to defendant; since a plea of the statute of limitations by mere reference to the section pleaded, according to section 458, Code of Civil Procedure, is a good plea of a prescriptive right to the use of water in cases of this kind: Alhambra etc. Water Co. v. Richardson, 72 Cal. 598, 14 Pac. 379. That the court denominated this finding a "conclusion of law" is of no consequence; for, conceding that it is a conclusion of law, the code authorizes it to be pleaded and found as the representative and equivalent of the facts from which it is drawn. The code makes this an exception to the general rule requiring facts only to be pleaded, for which, perhaps, no sufficient reason is perceptible; yet without doubt the legislature had power to make the exception.

From the foregoing considerations it would seem to follow that it was necessary to the former judgment sustaining the plea of the statute of limitations that the court should have found that the adverse user was commensurate with all diversions of water by defendant during the period necessary to give defendant a prescriptive right, and thereby to complete the defense that plaintiff's cause of action was wholly barred; otherwise the defense was incomplete, and could not have been sustained as to the whole cause of action, but only as to a part of it; in which case the plaintiffs must have recovered, at least, nominal damages. Had the defendant diverted only one hundred feet during the whole period of five years' adverse user, but had diverted two hundred feet during only the last two years of that period, the plea of the statute could not have

been sustained as a defense to the diversion of the additional one hundred feet during the last two years.

But for the merely affirmative finding in the former action, that the defendant adversely diverted and used "one hundred cubic feet per second, under a four-inch pressure," it would be clear that the finding "that plaintiffs' cause of action was barred by the statute of limitations" necessarily implies that defendant's adverse user during said period of five years comprehended all diversions by defendant for which it otherwise would have been liable, whether such diversions were at the rate of one hundred cubic feet of water per second, as found by the court in the former action, or at the rate of four hundred and fifty cubic feet per second, as found by the court in this action. But it is contended for appellants that the finding in the former action specially limits the adverse user, and consequently the prescriptive right of the defendant, to one hundred cubic feet of water per second, and that this special limitation must prevail over anything inconsistent with it in the more general findings in the same action. Conceding that, as a general rule, specific findings prevail over general findings which are inconsistent with them, I think this case furnishes no occasion for the application of the rule, for the reason, if for no other, that the special finding in the former action, properly construed, is not inconsistent with the general finding that plaintiffs' cause of action was barred by the statute of limitations, or with anything implied in this general finding. That the so-called "special finding" is ambiguous, uncertain, and therefore a proper subject of construction, appears upon its face. It cannot be so construed as to give effect to all its words and phrases of well-defined meaning. Either the phrase "under a four-inch pressure," or the words "cubic feet per second," must be denied any effect; and the question is, which of these shall be rejected?

The answer of the defendant in the former action alleged that in 1874 it acquired the right to divert and use fourteen thousand four hundred "cubic inches" of water per second, "under a four-inch pressure"; and the special finding is that in 1874 "defendant, under the laws of this state and in conformity therewith, . . . . took from the waters of Kings river one hundred cubic feet per second, under a four-inch pressure," etc., which is equal to one hundred and seventy-two

thousand eight hundred cubic inches, and nearly twelve times fourteen thousand four hundred cubic inches, to which defendant alleged it had acquired the right. ''The laws of this state,'' under and in conformity with which the court found that the defendant had acquired the right to one hundred cubic feet per second, must have been those contained in the Civil Code, section 1415, which is as follows: ''A person desiring to appropriate water must post a notice in writing, in a conspicuous place, at the point of intended diversion, stating therein: (1) that he claims the water there flowing to the extent of [giving the number] inches, measured under a four-inch pressure; (2) the purposes for which he claims it, and the place of intended use; (3) the means by which he intends to divert it, and the size of the flume, ditch, pipe or aqueduct in which he intends to divert it. A copy of the notice must, within ten days after it is posted, be recorded in the office of the recorder of the county in which it is posted.''

The rule of measurement prescribed by this section is not by cubic inches, but by square inches, according to the well-known rule of miner's measurement, by which the ''four-inch pressure'' is made an effective factor, which cannot be disregarded. An inch of water, by this rule of measurement, is the quantity that will be forced through an aperture of one inch square by a pressure of water four inches in depth above the aperture. Consequently one foot of water, by this measurement, would be equal to one hundred and forty-four square inches upon a cross-section of the stream, and one hundred feet would equal fourteen thousand four hundred square inches. Assuming that the headgate, through which the water is to be measured and admitted into the ditch, is forty feet wide (which accords with the evidence in this case), the gate would have to be raised two and one-half feet to admit the passage of one hundred feet, or fourteen thousand four hundred inches, by the miner's or Civil Code rule of measurement. Then, in order to pass four hundred and fifty cubic feet of water per second—the quantity awarded to defendant in this action—the water would have to flow through the gateway at the rate of four and one-half feet per second, which would be equal to a rate of two hundred and seventy feet per minute, or about three miles per hour. Assuming that, under a pressure of

four inches, the water would flow at this rate, the quantity passing the gate per second would be precisely equal to fourteen thousand four hundred miner's inches, and also to one hundred miner's feet. Therefore, if the special findings of the court on the former trial, as to the number of inches and feet of water, are construed to mean miner's inches and miner's feet, those findings will be perfectly consistent with each other and with defendant's answer in that action. Besides, they will not appear to be inconsistent with the findings in this action, since there is no evidence that one hundred feet, by miner's measurement, is not equal to the four hundred and fifty cubic feet per second, to which in this action the defendant was adjudged to be entitled. No attempt appears to have been made at the trial of this action to reduce the "450 cubic feet per second" to miner's feet, nor to reduce the one hundred miner's feet to cubic feet per second. The finding that defendant acquired its right to the water under and in conformity with the laws of this state (Civil Code), and that the water was to be measured by inches or feet under a four-inch pressure, plainly indicate that the miner's rule of measurement, adopted by the Civil Code, was intended. Yet these were disregarded as meaningless, because inconsistent with the words "cubic feet per second"; and thereby the findings of fact were made inconsistent with each other, and inconsistent with the judgments in both actions. Why not, rather, reject the words "cubic feet per second," and thereby make the findings of fact consistent with each other, and consistent with both judgments? These ends are sufficient of themselves to turn the scale in favor of rejecting the words "cubic feet per second." But there is another circumstance which may be considered favorable to this construction, and which consists of the acts of the defendant, by its agents, under and immediately after the posting of its notice in accordance with section 1415 of the Civil Code, claiming "14,400 cubic inches per second under a four-inch pressure." Instead of constructing a small ditch of a capacity to carry merely fourteen thousand four hundred cubic inches per second, equal to about eight and one-third cubic feet per second, the defendant proceeded to construct a ditch of about twenty miles in length, and of sufficient capacity to carry seven hundred and seventy-seven thousand six hundred cubic inches per

second, equal to four hundred and fifty cubic feet per second, being of about fifty times the capacity required to carry fourteen thousand four hundred cubic inches per second, yet, presumably, of no greater capacity than required to carry fourteen thousand four hundred miner's inches. Through this ditch defendant continued to divert water to its full capacity, without interruption, for more than five years before the commencement of the former action. These acts show that, by its notice under the code, the defendant intended miner's inches, and not cubic inches; and the findings of the court in the former action must have been so intended, and should be so construed. It cannot reasonably be presumed that in the former action the court intended to award to the defendant eleven times as much water as it claimed in its answer; yet, by the construction contended for, that court awarded one hundred cubic feet per second, which is more than eleven times fourteen thousand four hundred cubic inches per second—the quantity claimed by the answer. No doubt the intention of the court was to give defendant the equivalent of the number of inches claimed (fourteen thousand four hundred), reduced to feet (one hundred); and, construing them to mean miner's inches and miner's feet, the reduction was correct, but, if cubic inches and cubic feet were intended, it was wildly erroneous. The effect of the findings and judgment in the present action is to reject the words "cubic feet per second," in the former findings, and to give effect to the words "under a four-inch pressure"; which, under all the circumstances, I think to be a correct construction of those findings. The parol evidence tending to prove the capacity of the ditch, and the quantity of water actually diverted during the adverse user, prior to the former action, was properly admitted as an aid to the construction of the former judgment, which, upon its face, is ambiguous and uncertain as to the quantity of water awarded to defendant in that action, and it could have had no other effect prejudicial to the plaintiffs: Gray v. Dougherty, 25 Cal. 266; Garwood v. Garwood, 29 Cal. 521; Alhambra etc. Water Co. v. Richardson, 72 Cal. 598, 14 Pac. 379. The objection to this evidence improperly assumed that the former judgment was too plain to admit of construction,

and that the effect of this evidence was to contradict it. I think the judgment and order should be affirmed.

We concur: Belcher, C.; Fitzgerald, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.

DE HAVEN, J.—I concur in the judgment affirming the order appealed from.