[Sac. No. 2245. In Bank.—February 17, 1917.]

## E. CLEMENS HORST COMPANY (a Corporation), et al., Respondents, v. TARR MINING COMPANY (a Corporation), Respondent; SOUTH YUBA WATER COMPANY (a Corporation), et al., Appellants.

WATER RIGHT — RIPARIAN OWNER — PRESCRIPTIVE RIGHT TO DIVERT WATER.—In this action by a riparian proprietor to enjoin the defendants from diverting the natural water of a stream so as to prevent it from flowing to the plaintiffs' land, the evidence is held to show that the defendants, by continuous adverse diversion and use, by themselves and their predecessors in interest, had acquired prescriptive rights to divert the water.

ID.—DIVERSION ADVERSE TO LOWER RIPARIAN OWNER—NATURE OF PRESCRIPTIVE RIGHT.—The open, notorious, and continuous taking of a large quantity of the natural waters of a stream by an upper diverter, under a claim of right so to do and with the knowledge of lower riparian proprietors, is an invasion of the rights of such proprietors, whether they used the water, or any part thereof, on their lands or not, and regardless of the fact that the water remaining in the stream may have been sufficient for their needs and uses. Such a taking is adverse to the rights of the lower riparian proprietors to the full flow of the stream by their lands, and a continuance thereof for five years establishes a perfect right to continue the diversion of the quantity so taken. The prescriptive right so acquired is thereafter held by a perfect title in fee, good against all lower riparian proprietors, and passes by a conveyance thereof.

ID.—DIVERSION OF MORE WATER THAN AUTHORIZED BY PRESCRIPTIVE RIGHT — LOSS BY LEAKS IN FLUMES.—The prescriptive right so acquired to divert a specified quantity of the water of the stream is not affected by the fact that the owner thereof, subsequent to the accrual of the right, by perfecting its dams and repairing its canals, was enabled to and did divert a larger quantity of the water; and the fact that a small part of the water taken into the canals at the dam has always escaped from the canals through leaks in the flumes and thus been returned to the stream does not deprive the diverter of the right to the quantity actually kept out of the stream.

ID.—STATUTE OF LIMITATIONS—PLEADING PRESCRIPTIVE RIGHT—FINDINGS.—In an action by a riparian owner to establish his riparian rights, an answer by the defendant that the action is barred by the statute of limitations, by reference to the appropriate section of the Code of Civil Procedure, is a sufficient pleading of the prescriptive right to the quantity of water claimed by the defendant,

and justifies the taking of evidence and the making of findings with respect to such prescriptive right.

ID.—JUDGMENT UPON ESTABLISHING PRESCRIPTIVE RIGHT.—The proper form of a judgment in such a case would be to declare the right of the respective defendants to make the diversions of water from the stream to the quantity as to which the prescriptive right was found to be established, and to permit them to continue the diversion of such quantity, but to enjoin them from making any greater diversion of the water by means of improved dams or canals or otherwise. A judgment which, in effect, merely allows the respective defendants to continue their respective diversions so long as the quantity flowing by the plaintiffs' land was not reduced thereby below specified amounts is erroneous.

ID.—EVIDENCE—QUANTITY OF WATER COVERED BY PRESCRIPTIVE RIGHT.— The evidence in this case is held to be sufficiently definite and certain to support findings as to the quantity of water covered by the prescriptive rights of the respective defendants at their several dams.

ID.—EXTENT OF PRESCRIPTIVE RIGHT TO WATER.—The right of one claiming a prescriptive title to water to be diverted from a stream is not measured by the quantity that passes by his dam and reaches a riparian proprietor below, but by the quantity which he takes from the stream and uses.

ID.—INJUNCTION—PROTECTION OF PRESCRIPTIVE RIGHT AGAINST WRONGFUL DIVERSION.—A person who has acquired a prescriptive right to divert a certain quantity of the natural waters of a stream may maintain an action to restrain any wrongful diversion above that would diminish the stream at his place of diversion, so that it would not afford him his usual quantity.

APPEAL from a judgment of the Superior Court of Yuba County. Eugene P. McDaniel, Judge.

The facts are stated in the opinion of the court.

Wallace Dinsmore, and Wm. B. Bosley, for Appellants.

W. H. Carlin, George & Hinsdale, and Samuel C. Wiel, for Plaintiffs and Respondents.

White, Miller & McLaughlin, and C. E. McLaughlin, for Respondent, Tarr Mining Company.

SHAW, J.—This appeal is taken by the defendants, South Yuba Water Company, United Water and Power Company, James D. Stewart, and Pacific Gas & Electric Company, from

a judgment in favor of the plaintiffs. Judgment was given against the Tarr Mining Company, but it has not appealed therefrom.

The plaintiffs, respectively, own farms aggregating about three thousand five hundred acres, alleged to be bordering upon Bear River. They claim the right to the use of the water of the river as riparian owners. They also claim that, during each irrigating season for more than five years before the beginning of the action, they continuously, adversely to all persons and under a claim of right, have diverted from the river and used upon their lands for the irrigation thereof quantities of water amounting in the aggregate to three thousand four hundred miner's inches of water, whereby they have gained the right to continue to take and use on said lands said quantity of the water of the stream. They charge that in the year 1910 the defendants entered upon Bear River and its tributaries, above their said lands, obstructed the flow thereof, and diverted therefrom the waters thereof to such an extent that the plaintiffs have been thereby deprived of at least one-third of the water which they had formerly taken and used and were entitled to take and use from said river as aforesaid. The action was begun on March 17, 1911. The prayer is that the defendants be enjoined from obstructing the flow of the river, or diverting water therefrom, in such a manner as to prevent the water thereof from flowing down the channel to plaintiffs' land for plaintiffs' use, and that the defendants' dams be abated and removed.

The Pacific Gas & Electric Company and the South Yuba Water Company, in a joint answer, aver that neither of them has ever taken water from the river or its tributaries except such water as it has owned and has had the right to take, under appropriations completed prior to those of any of the plaintiffs, and that the right of each of them to take therefrom and use such water as it has taken therefrom and used, is "prior in time and superior in law" to the alleged rights of the plaintiffs. This answer also alleges that the respective causes of action of the plaintiffs, set forth in the complaint, are each barred by the provisions of sections 312, 318, 319, 335, 339, subdivision 1, and 343, of the Code of Civil Procedure. The defendants, United Water and Power Company and James D. Stewart, join in a separate answer. This answer "admits" that the United Power and Water Company and

its predecessors in interest for more than forty years have maintained a dam in Bear River, and have by means of said dam and a ditch called the Miners Ditch taken from said river two thousand two hundred miner's inches of the waters thereof, and have put the same to beneficial uses. (The complaint contains no allegation to that effect.) The answer further alleges that said Water Company is now the owner, and that its predecessors in interest have been, for more than forty years before the action was begun, the owners and in possession of the right to divert from said river, by means of said dam and said Miners Ditch, all the water that said ditch will carry. It also pleads the statute of limitations, as in the other answer.

This form of pleading gives little information as to the defense relied on. We must look to the evidence to understand the real nature and character of the water rights asserted by the defendants at the trial. The South Yuba Water Company has no present right in the water of Bear River. Such rights as it had were conveyed by it to the Pacific Gas & Electric Company on December 31, 1910. We assume that it was made a party defendant because said conveyance was not recorded until after the action was begun. Stewart was and is the president and manager of the United Water and Power Company and he is not otherwise interested in the controversy.

The Pacific Gas & Electric Company claims three distinct and separate rights to divert water from Bear River. These are as follows: 1. The right to maintain a dam, known as "Bear River Dam," at a point in the river about thirty-six miles above the lands of the plaintiffs, and thereby to divert from the river into a flume or canal known as the "Bear River Canal" a sufficient quantity of the water of the river to fill said canal, claimed to be one thousand eight hundred miner's inches, and devote the same to public use for irrigation or other purposes. 2. The right to maintain a dam, known as the "Gold Hill Dam," at a point in said river about seventeen miles above the lands of the plaintiffs, and thereby to divert into a flume or canal, known as the "Gold Hill Canal," sufficient of the waters of the river to fill said canal, claimed to be 840 miner's inches, and to devote it to the same public uses. 3. The right to maintain a dam, known as "Bear Valley Dam," at a point in the river about fifty miles above

the lands of the plaintiffs, and thereby to divert into a flume or canal, known as the "Boardman Canal," from a storage reservoir there maintained by said company, which collects and stores the flood and storm waters of said river, a constant flow of two thousand eight hundred miner's inches of water, and to devote it to the same public uses.

The United Water and Power Company claims the right to maintain a dam in Bear River at a point two miles below the above-mentioned Bear Valley Dam, and forty-eight miles above plaintiffs' lands, known as the "Head Dam," and a ditch leading therefrom known as "Miners Ditch," and thereby to divert from said river all the waters thereof that said ditch will carry, claimed to be two thousand one hundred miner's inches, and to devote the same in part to public use and in part to the private use of the owner of the said dam and ditch.

It would have served to clarify the issues and would have led to more definite findings than those that were made regarding the defenses pleaded if, instead of the general statements of the answer, the defendants had set forth the facts relating to each of their several asserted prescriptive water rights, stating definitely the quantity of water they claimed for each right. The general form of the answer may have led to the erroneous theory which we find in the decision and judgment.

The findings relating to the flow of water in Bear River state that during every year since 1845 up to the year 1910 there flowed naturally in said river at the easternmost line of plaintiffs' land, for the use of said land, during the months of April, May, and June, a minimum of four thousand miner's inches of water; during July, three thousand miner's inches; during August, two thousand two hundred miner's inches, and during September and October, two thousand miner's inches; that these months comprise the irrigating season for plaintiffs' lands; that plaintiffs, up to the year 1910, had always used during said months said quantities of water on their lands; that the said amounts were, are, and in the future always will be necessary for use of said lands; that during the said irrigating season of 1910 the defendants, by means of the dams and canals aforesaid, naming them, did divert, ever since have diverted, and threaten to continue to divert from said river and carry out of its watershed "more

than one-third of the said waters of said Bear River to which plaintiffs, and their said lands, are entitled as aforesaid." There are further findings that none of the causes of action of the plaintiffs, or any of them, is barred by the provisions of any or all of the sections of the Code of Civil Procedure specified in the answer, that the defendant Pacific Gas & Electric Company, and its predecessors in interest, have not, and never have had, any right to divert any of the waters of Bear River, the flow of which the plaintiffs have been found to be the owners of and entitled to the use of as aforesaid, and that said defendant and its predecessors in interest have not heretofore diverted from said river or used any of said waters so found to be owned by the plaintiffs and have not acquired any right to do so, and that as to said defendant the right of the plaintiffs to the water so found to be owned by them is paramount to any right thereto of said defendant; that the United Water and Power Company, and its predecessors in interest, have never, through the Miners Ditch or otherwise until 1910, diverted any water adverse to the rights of the plaintiffs to the water of which the plaintiffs are found to be the owners as aforesaid, and that said defendant is not the owner nor in the possession of any right to divert from said river during the irrigating season of any year any of the waters thereof so found to be owned by the plaintiffs.

The judgment makes no provision as to the use or diversion of water except during the months above named. It declares merely that the plaintiffs have the right to the continued flow in Bear River, every year, at their eastern boundary, during the months above named, of the quantities of water stated in the findings as flowing in said months at said boundary, and that the defendants be enjoined from diverting any water from Bear River "at any time when the waters flowing in said Bear River at said easternmost boundary of plaintiffs' said lands, in any year at any time during the months of April, May, and June, shall be less than four thousand inches; during the month of July, less than three thousand inches; during the month of August, less than twenty-two hundred inches, and during the months of September and October, less than two thousand inches."

The several claims of the defendants to the ownership of the above-described water rights are supported by evidence similar in character. A statement of that relating to the

diversion at the Bear River Dam aforesaid will illustrate them all sufficiently for the purposes of this decision. The Bear River Dam and the flumes and ditch leading therefrom, now owned by the Pacific Gas & Electric Company, were constructed about the year 1852. They have been maintained and operated continuously, without substantial change, from that time down to the time of the alleged diversions of water from Bear River by the defendants in 1910. This was done by the successive predecessors in interest of the Gas Company, the South Yuba Water Company being in the ownership and control from the year 1890 until December 31, 1910. The Bear River Canal, at its head, is of a size sufficient to carry more than one thousand five hundred inches of water. The lowest estimate of its capacity made by any witness was 1,520 miner's inches. At least that quantity of water has been diverted from the river by means of said dam and canal by the predecessors of the Gas Company, and put to public use for beneficial purposes continuously during the above-named months of each year prior to 1910, for many successive periods of five years, whenever there was enough water of the river there flowing to fill the canal, and when there was less flowing all was diverted. It is not questioned that this diversion and use, whatever the quantity, was made under a claim of right to do so. This diversion and use was continuous for so many years, was so openly made, so notorious and embraced so large a portion of the waters of the stream and extended over so wide a territory, that it could not be, and is not, contended that the plaintiffs and their predecessors in interest were without knowledge thereof, if such knowledge were necessary to the inception of the period of limitation and prescription. There was no substantial conflict in the evidence with respect to these facts.

The taking of the 1,520 inches of water from the river diminished its flow to that extent below the dam down to the plaintiffs' lands. As the plaintiffs were then entitled to the full flow of the stream by their lands, this taking was an invasion of their rights, whether they used the water, or any part thereof, on their lands or not, and regardless of the fact that the water remaining in the stream may have been sufficient for their needs and uses. It was therefore adverse to plaintiffs' rights, and a continuance thereof for five years established in the predecessors in interest of the Gas Com-

pany a perfect right to continue the diversion of the quantity
so taken.   (*Moore* v. *Clear Lake W. W.*, 68 Cal. 146, 150, [8
Pac. 816] ; *Gallaher* v. *Montecito etc. Co.*, 101 Cal. 242, 244,
[35 Pac. 770] ; *Anaheim etc. Co.* v. *Fuller*, 150 Cal. 327, 335,
[11 L. R. A. (N. S.) 1062, 88 Pac. 978] ; *Gould* v. *Eaton*, 117
Cal. 539, 543, [38 L. R. A. 181, 49 Pac. 577] ; *Stanford* v.
*Felt*, 71 Cal. 250, [16 Pac. 900].)   This right was thereafter
held by a perfect title in fee, good against all lower riparian
proprietors, including the plaintiffs.   (*Arrington* v. *Liscom*,
34 Cal. 365, 381, [94 Am. Dec. 722] ; *Cannon* v. *Stockmon*, 36
Cal. 535, 540, [95 Am. Dec. 205] ; *Alhambra etc. Co.* v. *Rich-
ardson*, 72 Cal. 598, 600, [14 Pac. 379].)   Under the evi-
dence, therefore, the South Yuba Water Company, on Decem-
ber 31, 1910, when it conveyed its water rights to the Gas
Company, held a complete and perfect title to the right to
divert at Bear River Dam the quantity of water which had
been there diverted continuously for so many years.   Its con-
veyance transferred that right and title to the Gas Company.
This right was therefore established by the evidence, and the
findings that plaintiffs' causes of action were not barred by
the statute of limitations and that the right of the plaintiffs
to have flow at their lands in Bear River and to use the
amounts of water above specified, during the months stated,
is paramount to the right and title of the Gas Company, are
contrary to the evidence, so far as this prescriptive right and
title, and others of like origin and character and sustained
by like proofs, are concerned.   The plaintiffs' causes of action
are barred with respect to these prescriptive rights.   These
include the diversions at Gold Hill Dam, at the Bear Valley
Dam, and at the Head Dam of Miners Ditch, each of which is
in pursuance of a prescriptive right as well sustained by the
evidence as that at Bear River Dam.

The fact that the defendants, by means of new and more
perfect dams, and by repairs to the canals, completed within
three years prior to 1911, were enabled to and did, in the year
1910, divert more water than before, did not affect the rights
to continue to divert the quantity which they had previously
acquired the right to divert.   And if a small part of the
water so taken into the canals at said dams has always
escaped from the canals through leaks in the flumes and thus
has been returned to the stream below, this does not deprive
defendants of the right to the quantity actually kept out of

the stream. It would only diminish by that much the quantity which they are entitled to continue to divert by reason of the taking at the dam. It would not affect the right to the remainder after allowing for these leakages.

In an action by the riparian owner to establish his riparian rights, an answer by the defendant that the action is barred by the statute of limitations, by reference to the appropriate section of the Code of Civil Procedure, is a sufficient pleading of the prescriptive right to the quantity of water claimed by the defendant, and justifies the taking of evidence and the making of findings with respect to such prescriptive right. (*Alhambra etc. Co.* v. *Richardson,* 72 Cal. 598, 600, [14 Pac. 379]; *Churchill* v. *Louie,* 135 Cal. 608, 610, [67 Pac. 1052].) Consequently, the court should have made findings relating to these several claims of water rights by the defendants, notwithstanding the general character of the answer. The proper form of a judgment in such a case would be to declare the right of the respective defendants to make the diversions of water from Bear River to the quantity as to which the prescriptive right was found to be established and to permit them to continue the diversion of such quantity, but to enjoin them from making any greater diversion of the water of the river by means of improved dams or canals or otherwise. It would appear that the court endeavored to accomplish this object by declaring that they should make no diversion whatever when the water flowing at the plaintiffs' land was less than the quantities designated in the judgment during the respective months of the irrigating season. This, in effect, would allow the respective defendants to continue their respective diversions so long as the quantity flowing by the plaintiffs' land was not reduced thereby below the quantities specified. The objection to this form of judgment is that it puts upon the defendants a burden which the law does not attach to their prescriptive rights. The defendants' rights were positive as to quantity and they existed regardless of the effect on the stream below. The owner of a prescriptive right thus acquired is under no obligation to go below to ascertain or inquire whether those who there have rights in the water are receiving the usual quantity or not. His right is absolute. The consequences of his diminution of the stream must be suffered by those below. Under the judgment in this case the defendants could not safely divert the quantity of

water to which their prescriptive rights extend without first ascertaining each day that such diversion would not reduce the stream at plaintiffs' land below the minimum quantity established by the judgment.   Of necessity this would be very difficult, if not impossible.   All diversions and uses by riparian owners and others in the intervening space, seventeen to fifty miles, must be taken into the account.   Also the state of the weather and of the atmosphere, the possibility of rain to vary the flow of the stream and the losses by seepage in the stream as depleted compared with its loss if not diminished.   The right which the defendants had acquired is a right to take a positive quantity continuously, and it is not burdened by any such duties or obligations as would be imposed upon it by this judgment.

There is no force in the claim that the evidence is too indefinite and uncertain to support findings as to the quantity of water covered by the prescriptive right at the several dams.   It is true that the transcript indicates that little importance was attributed to this point.   Apparently it was obscured by other matters during the trial.   But there was evidence with respect to each of the diversions, showing the capacity of the several canals and the quantity of water carried therein, that is, that they were run full when there was water enough and that when there was less all the water was diverted.   The fact that witnesses differed in their evidence as to the capacity did not relieve the court of the duty of finding the facts.   In proving a prescription the evidence must relate to conditions and acts occurring at a period many years before the trial, and it is seldom harmonious in the details.   It is the duty of the court to compare and weigh such evidence and to reach a conclusion thereon as to the truth, according to its best judgment.   A continuous adverse diversion and beneficial use of a given quantity for a single period of five years establishes the title to that quantity. The proof need not extend over the whole period from the beginning of the diversion to the beginning of the action.   A failure of proofs as to some intervening period would not defeat the defendants' claim.

The important principle in the case, we may, in conclusion, repeat, is that the rights of the defendants in the stream, with regard to quantity of water, are not to be measured by

the quantity which has hitherto flowed or may hereafter flow therein at plaintiffs' lands, but by the quantity which has been adversely diverted at their dams and beneficially used continuously for a period of five years, under claim of right, by them and their predecessors in interest.

It is perhaps necessary to add that we refer to the water naturally flowing in Bear River, and not to such waters as may have been carried into it from the Yuba or American Rivers. It appears that such additions have been made in the past by the defendants and their predecessors. They have the right to retake these waters at their pleasure. The court must take account thereof and deduct the same in computing the adverse diversions from Bear River, allowing only the natural flow taken. This will make its task more difficult, but we cannot say that it will be impossible to distinguish them.

The appellants at the trial insisted, and on this appeal they still insist, that none of the lands of the plaintiffs are riparian to Bear River, except the tract known as the Daniel P. Durst Ranch, belonging to plaintiffs Ralph H. and M. H. Durst and the estate of Daniel Durst. It is admitted that all of the lands originally abutted upon the river, but it is claimed that by reason of changes in the course of the stream before the action was begun all of it, except the above-named tract, has ceased to abut thereon, except during times of extreme high water, and has thereby lost the riparian right. It is unnecessary to consider the question. So far as the last-named plaintiffs are concerned, the riparian character of their land enables them to maintain the action, and would sustain an injunction in their favor, if they were otherwise entitled thereto. (*Watson* v. *Lawson,* 166 Cal. 235, 241, [135 Pac. 961].) As to the other lands, it appears that the owners thereof have for more than forty years next before the action was begun diverted and used thereon practically all the waters of the stream that reach a point opposite the upper boundary of the land continuously and under claim of right. This would entitle the plaintiffs to maintain the action against any wrongful diversion above that would diminish the stream at their place of diversion, so that it would not afford them their usual quantity. Under these circumstances, the question

as to the riparian character and rights of this land is not of sufficient importance to this appeal to require consideration.

The judgment is reversed.

Henshaw, J., Lorigan, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.